Commonwealth of Pennsylvania in trust for the use of Sarah Jane Shaffer, now Sarah Jane Bentzel, *v.* George D. Julius and John P. Julius, Administrators d. b. n. of the Estate of George Julius, Deceased, Appellants.

*Guardian and ward—Default—Principal and surety.*

The default of a second guardian cannot discharge the sureties of his predecessor in the guardianship from the consequences of a previous default of their principal.

Where a decree of the orphans' court has fixed the liability of a guardian and his sureties, and the amount due from them, a default on the part of the guardian's successor in the guardianship will not discharge the sureties of the first guardian.

*Guardian and ward—Release—Fraud—Evidence—Question for jury.*

In an action by a ward against the sureties of her guardian, the case is for the jury, where the defendants set up a release executed by plaintiff after she became of age, which the plaintiff claims was procured by fraud, and the evidence tends to show that plaintiff was induced to sign the release by false representations made to her by the defendants to the effect that her counsel had agreed to the advisability of such a settlement, and that one of them had said she would probably get little or nothing out of her case by further litigation.

Where a plaintiff has been induced to a certain action by the false and fraudulent representation of the defendants, it is competent for her to testify that the false and fraudulent representations were the consideration or inducement to her action. This is not a violation of the rule that a party to a contract shall not testify his undisclosed purpose or intention, for the purpose of nullifying words or acts which are relied on by others, which words and acts in themselves are prima facie evidence of the agreement.

Argued June 4, 1895. Appeal, No. 14, July T., 1895, by defendants, from judgment of C. P. York Co., April T., 1892, No. 66, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on the bond of a guardian.

At the trial it appeared that on November 6, 1874, David Spahr was appointed guardian of Sarah Jane Shaffer by the orphans' court of York county, and filed the bond whereon this action was brought in the sum of $4,000 with George Julius as surety.

On March 21, 1887, the court removed Spahr and appointed Jesse V. Giesey guardian in his stead. On March 25, 1887, Spahr's account as guardian was filed. Exceptions thereto were referred to Horace Keesey, Esq., as auditor, who reported August 6, 1888, a balance due from David Spahr to his ward of $3,142.77, and the report was finally confirmed.

The ward Sarah Jane Shaffer, then the wife of Gilbert Bentzel, came of age March 28, 1888. On April 27, 1888, Mrs. Bentzel executed a power of attorney to Jesse V. Giesey, her former guardian, authorizing him to collect all moneys due and payable to her from her first guardian David Spahr.

After petition therefor filed January 14, 1889, the court ordered Spahr to pay to Giesey the balance found due by the auditor with interest, by January 23, 1889. This Spahr failed to do and was subsequently arrested on attachment and remained in custody until discharged under the insolvent laws, February 8, 1892. George Julius, the surety on David Spahr's guardian bond, died, and the letters of administration on his estate were issued on August 6, 1891, to the defendants, George D. Julius and John P. Julius.

This action was brought March 25, 1892, to compel the payment by the estate of George Julius of the sum for which David Spahr was in default to his ward.

On May 25, 1894, Sarah Jane Bentzel, in consideration of $1,500, executed a release in full settlement of her claim against the defendants. This release was attacked at the trial on the ground that its execution was procured by fraud and undue influence.

Defendants offered as a part of their defense to prove that in 1875 David Spahr bought a farm, using his ward's money in the payment of the price; but taking the title in his own name; that on December 3, 1887, this farm was levied upon the execution of a judgment creditor of Spahr, advertised for sale June 4, 1887, and finally sold December 3, 1887, for $1,300 to John S.

Trimmer, the plaintiff in the execution; that before this farm was so sold by the sheriff a notice was served on Jesse V. Giesey, then the guardian of Mrs. Bentzel, informing him fully of these facts, and requiring him to take such steps as might be necessary to secure the said farm or its proceeds for his ward by enforcing the resulting trust, and notifying him that if he failed so to do the estate of George Julius, the surety, would be discharged. The court under exception, rejected this evidence and sealed bills for defendants. [1–3]

When plaintiff was on the stand her counsel offered to prove by her testimony that on the 22d day of May, 1894, she was at home at the house of her husband, alone; that the defendants, George D. Julius and John P. Julius, together with the witness's uncle, J. S. Shaffer, came to the house, and endeavored to procure from her a settlement of her case against these defendants; that she refused at first to do anything, or to make any settlement, because of the absence of her husband, and because she wished to consult him and her counsel before taking any steps in the matter; that she was told by her uncle, who had before that time professed to be her friend, and to be acting in her behalf to procure her money, that she had better settle this claim for the sum of $1,500, or she would probably get nothing; that he had seen her lawyers twice, and they were agreed that she should settle with the defendants; that she objected to doing so, and proposed to come to York on the Saturday following with her husband, to see her counsel, and to meet the defendants there; and that it was urged upon her by one of the defendants, and by her uncle, Mr. Shaffer, that it must be done on that day, or not at all; that her lawyers were fooling her about, and one of them had said she would probably get little or nothing out of her case at any rate; that the plaintiff, believing that what her uncle, Mr. Shaffer, said was true, believing that he was acting in good faith for her, and that he had seen her counsel, and that they had agreed to and advised a settlement of this case by her, and being without any one present to advise her, and herself ignorant of business affairs, she consented under protest to sign the paper, and did so; that immediately after signing she told Mr. Shaffer that she did not think it was right; did not believe it would stand; that she ought to have seen her lawyers; that he replied to her that it

made no difference at all about the lawyers; she could come to York and offer them a couple hundred dollars to settle, and if they did not take it they could do without, or words to that effect;—for the purpose of showing that the plaintiff executed the release already offered in evidence under a mistake as to facts, under the influence of false respresentations which induced her to do so; and to show that fraud and misrepresentation were used by the defendants, and by J. S. Shaffer, in their presence, to procure the execution of the instrument, and to show that it was executed by her under a mistake of facts in regard to the supposed advice of her counsel to settle; to be followed by the evidence of her counsel that they had not agreed to or advised a settlement, or told J. S. Shaffer any such thing; to be followed also by evidence that, immediately on the return of her husband to the house on the afternoon of the execution of this paper, Mrs. Bentzel told him what she had done;— showed him the check which had been given her;—and that she sent it back to York by the hands of her husband early the next morning for redelivery to the defendants; that said check was taken on the morning of May the 26th by Gilbert Bentzel, Daniel Lau and N. M. Wanner, counsel for the plaintiff, to the business place of John P. Julius, on South George street, in the city of York, and there delivered to him; counsel for the plaintiff stating to him that Mrs. Bentzel declined to accept or to retain it in settlement of her case; that she had been imposed upon and misinformed in the procurement of the release, and that the case would be pushed for the entire amount; the check was offered to Mr. Julius, who declined to receive it, and that it was then laid down upon his counter in his presence, and the parties who brought it there left.

This for the purpose of impeaching the validity of the release offered in evidence; for the purpose of showing that it was procured by fraud and misrepresentation, and to show the return of the alleged consideration upon which it was executed.

Objected to (by defendants) as not evidence for the purposes offered, or any of them; as not proper legal evidence in rebuttal; as not being legal or competent evidence to set aside the release in evidence under seal; as not being so clear, precise and specific as to be competent, legal evidence to establish fraud, accident or mistake; and as being an effort to show in part not

facts, but conclusions and mental processes of the witness ; and as containing also an offer to prove matters subsequent to the release ; and, taken as a whole, the offer is irrelevant and immaterial ; and that what is proposed to be proven by the counsel is immaterial, irrelevant, and not proper legal evidence for any purpose.

The Court : I will admit the offer except the following words : " Immediately after signing she told Mr. Shaffer that she did not think it was right ; did not believe it would stand ; that she ought to have seen her lawyers ; and that he replied to her that it made no difference at all about the lawyers ; she could come to York and offer them a couple hundred dollars to settle, and if they didn't take it, they could do without, or words to that effect." It is not evidence for the purpose offered.

Exception to the defendants, and bill sealed by order of court. [4]

Plaintiff's counsel offered to ask her when she was on the witness stand what induced her to sign the release ; for the purpose of showing that the plaintiff signed the paper, because she believed the statement made by Shaffer that he had seen her lawyers, and they were satisfied that she should settle the case.

It was objected to that that is not proper legal evidence for the purpose of affecting this instrument ; as not being offered to show that her purpose was disclosed to the defendants.

The Court : I will admit that offer, and seal a bill of exceptions for the defendants.

She answered : " Just because Shaffer said he was with the lawyers, and that they were satisfied ; and then I thought, well, I will sign it, and he will do what is right."

Plaintiff's counsel proposed to ask the witness what she meant by " he."—" He will do what is right." Defendants' counsel objected because it was cross-examination by plaintiff of her own witness.

The Court : I think you have a right to ask her to explain that.

A. " I mean Shaffer." [5]

Verdict and judgment for plaintiff for $4,000. Defendants appealed.

*Errors assigned,* among others, were (1–5) rulings on evidence, quoting the bills of exceptions.

*Henry C. Niles, W. F. Bay Stewart* and *George E. Neff* with him, for appellants.—The conversion of a trust fund into land does not divest it of its fiduciary character, and it will be pursued whenever it can be identified and traced: Sadler App., 87 Pa. 154; Sheetz v. Marks, 2 Pearson, 302.

By using due diligence and by doing his duty to the surety Mr. Giesey might have had satisfaction pro tanto from the estate of the real debtor, and it was his duty to have done this: Bellas v. Miller, 8 S. & R. 452; Lichtenthaler v. Thompson, 13 S. & R. 156; Ramsay v. Westmoreland Bank, 2 P. & W. 203; Fegley v. McDonald, 89 Pa. 128.

It is error to permit a party to a written contract to testify as to what was the motive or inducing circumstance which led him to execute it: Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35; Spencer v. Colt, 89 Pa. 314; Juniata Building Asso. v. Hetzel, 103 Pa. 507.

In order to set aside a written instrument for misrepresentation there must be established misrepresentation, falsity, scienter, deception and injury: 8 Am. & Eng. Ency. of Law, 636; Kountze v. Kennedy, 72 Hun, 311; Steinam v. Bell, 57 N. Y. 462; Campbell v. Patterson, 95 Pa. 447; McGrann v. P. & L. E. R. R., 111 Pa. 171; Clark v. Everhart, 63 Pa. 347; R. R. v. Brinley, 15 Pa. C. C. 339.

The evidence of fraud should be clear, precise and indubitable of what occurred at the execution, and the instrument will not be set aside upon the uncorroborated evidence of the party: Cummins v. Hurlburt, 92 Pa. 165; Bierer's App., 92 Pa. 265; Hoffman v. R. R., 157 Pa. 174; English's App., 119 Pa. 533; Jackson v. Payne, 114 Pa. 67; Stine v. Sherk, 1 W. & S. 195; Irwin v. Shoemaker, 8 W. & S. 75; Rowland v. Finney, 96 Pa. 192.

*N. M. Wanner, E. D. Bentzel, J. G. Glessner* and *Allen C. Wiest* with him, for appellee.—The final decree of the orphans' court, against the guardian Spahr, unappealed from, was conclusive: Act of March 29, 1832, P. L. 190; Garber v. Com., 7 Pa. 265; Com. v. Gracey, 96 Pa. 70; Com. v. Rhodes, 37 Pa.

60; McMicken v. Com., 58 Pa. 213; Masser v. Strickland, 17 S. & R. 354; Evans v. Com., 8 W. 398.

Giesey, the second guardian, owed no duty of protection to the surety of the first guardian, who was in no sense responsible for him: Com. v. Brice, 22 Pa. 211; Way v. Hooton, 156 Pa. 9.

The evidence of fraud was sufficient for the jury: Silk v. Mut. Reserve Fund Life Assn., 159 Pa. 625; Levick v. Brotherline, 74 Pa. 149; Hoge v. Hoge, 1 Watt, 163; McGrann v. Pitts. & L. E. R. R., 111 Pa. 171; Volkenand v. Drum, 154 Pa. 616; Martin v. Kline, 157 Pa. 473; Gordon v. McCarty, 3 Whar. 406; Brooks v. First Pres. Ch., 128 Pa. 408.

OPINION BY MR. JUSTICE MITCHELL, January 27, 1896:

The first three assignments of error are in substance that defendant was not allowed to prove that Giesey, the second guardian of Mrs. Bentzel, might have made a part at least of the money due from Spahr, his defaulting predecessor in the guardianship, by asserting his ward's title to the land levied upon as Spahr's, on the ground that it was bought with his ward's money, and that the second guardian having thus had in his hands the means of payment, and letting it go unclaimed, the sureties of the first guardian were discharged. But waiving the question whether a creditor's declining to act on a mere notice that as a result of a law-suit he may obtain satisfaction, would under ordinary circumstances discharge a surety, there were two conclusive reasons why no such result should follow in the present case. First, the default, if it was one, of the second guardian could not discharge the sureties of the first guardian from the consequences of a previous default of their principal: Com. v. Brice, 22 Pa. 211; and secondly, the decree of the orphans' court had fixed the liability and its amount, both as to Spahr and his sureties: Com. v. Gracey, 96 Pa. 70. There was no error therefore in excluding these offers of evidence which would have been irrelevant if admitted.

The real question in the case was whether the release of May 25, 1894, was valid. The appellants with J. S. Shaffer, an uncle of Mrs. Bentzel, went to her house, taking with them the release previously prepared, and in the absence of her husband obtained her signature to it. She alleged that she was

induced to sign it by certain false and fraudulent representations, especially that her counsel agreed to the advisability of such a settlement, and that one of them had said she would probably get little or nothing out of her case by further litigation. The appellants denied that any such representations were made, but this being settled against them by the verdict, they now contend that the evidence was not sufficient to justify the court in submitting the question of fraud to the jury. It is quite evident, even from the testimony produced by the appellants, that Mrs. Bentzel desired to consult her husband and her lawyers before making any settlement of her suit, or executing any papers in relation to it, and that her reluctance to do so without consulting them was overcome by representations then made to her. It would not serve any useful purpose to discuss this evidence in detail. It is enough to say that it not only was sufficient to require submission to the jury, but that it would not have supported any other verdict.

It is however further contended that it was error to permit Mrs. Bentzel herself to testify as to the motive or inducement which led her to sign the release, and Spencer v. Colt, 89 Pa. 314, Juniata Building Assn. v. Hetzel, 103 Pa. 507, and Thomas v. Loose, 114 Pa. 35, are cited in support of this contention. That the rule there laid down was entirely sound there is no need to question, but it is very clearly inapplicable to the present case. In Spencer v. Colt, all that was ruled was, in the language of the court, "everything that was said and done at the time . . . . was received. The unexpressed intent, motive, or belief existing in Mr. Manser's mind when he signed the papers could not aid the jury in ascertaining whether the language or conduct of the plaintiff had been such as to create such an intent, motive or belief." The case is cited and the principle thus stated by the court below in Nat. Bank of Catasauqua v. North, 160 Pa. 303,—"the ordinary rule as to transactions between men (is) that one's undisclosed intent is not to affect the other,"—and that opinion was adopted by this court. So in Building Assn. v. Hetzel it was said that "a party to a contract shall not testify his undisclosed purpose or intention, to nullify words or acts relied on by others, which in themselves prima facie evidence the agreement." In Thomas v. Loose an offer was made inter alia to prove a certain oral agreement at the time of a

written contract, and that "it was the inducing circumstance on the part of the defendants to sign the agreement." What this court said was, "It was competent to prove all that was said and done. It was for the jury to determine from what was said and done at the making of the contract whether the oral agreement, if proved, induced the defendants to sign the written one. The defendants are not permitted to testify their unexpressed intent, motive or belief at the time they signed the contract. The thoughts of one party cannot be proved to bind the other." This last sentence shows the principle of the rule fairly to be gathered from the cases, "the thoughts of one party cannot be proved to bind the other," or as it is more fully expressed in Building Assn. v. Hetzel, "a party to a contract shall not testify his undisclosed purpose or intention, to nullify words or acts relied on by others, which in themselves prima facie evidence the agreement." This however is very different from testifying the fact that false and fraudulent representations were the consideration or inducement to the party's action. This is one of the facts which is always part of the res gestæ, and which it was always competent for the party to prove. And now that the party is a witness there is no sound reason why he should not prove it by his own testimony so long as he is confined to the facts, and does not undertake to contradict his words or acts by an undisclosed motive or intent. Such testimony is in exact analogy with the ordinary rule in regard to the proof of a cotemporaneous parol agreement or promise, to vary or even contradict a writing, which requires the party to prove that it was a substantial part of the consideration without which the writing would not have been signed: Honesdale Glass Co. v. Storms, 125 Pa. 268, a fact which no case that I am aware of holds the party incompetent to prove by his own testimony, and which can rarely be proved in any other way. An equally close analogy is found in the rule that a vendor seeking to rescind a sale on credit, for fraudulent representations as to the buyer's solvency, etc., must show that except for such representations the credit would not have been given, and no case has been found which holds that he may not prove this fact by his own testimony.

In the present case Mrs. Bentzel was called to prove the statements made to her, and they were shown to be not only false

and fraudulent, but also of the most persuasive character, being representations of the opinion and advice of her counsel, as well as of her uncle whom she supposed to be acting as her friend. It was almost superfluous in the face of the plain facts to ask her in addition whether they were the moving consideration or inducement to her action, but there was no error in permitting her to say so.

Judgment affirmed.