# Bierman *v.* Lebanon Valley College, Appellant.

*Evidence—Reformation of written paper—Mistake—Equity.*

A person who seeks to rectify a deed on the ground of mistake must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable continued concurrently in the minds of all parties down to the time of its execution; and also, must be able to show exactly and precisely the form to which the deed ought to have been brought. To reform a contract, and then enforce it in its new shape, calls for a far greater exercise of the power of a chancellor than simply to set the transaction aside. Reformation is a much more delicate remedy than rescission. Hence, in order to justify a decree for reformation in cases of pure mistake, it is necessary that the mistake should have been mutual.

After a lapse of nine years an attempt to reform a paper so as to make it import an obligation to pay to another person than the person named, for a different purpose, or for a purpose not designated in the paper itself, can only succeed where the evidence of mistake is clear, precise and indubitable.

In an action by a former college president against the college which had employed him to recover a balance of salary, admitted to be due, the defendant offered as a set-off an amount alleged to be due on a subscription paper signed by the plaintiff. The subscribers to the paper bound themselves to pay the amounts set opposite to their names to a person individually who was in fact the treasurer of the college. The paper was prepared at a meeting of the board of trustees at which meeting a resolution was passed appointing a committee to take subscriptions for the immediate relief of the college. It did not appear that all of the subscribers were

present at this meeting, or that they knew of the resolution. The subscription paper made no reference to the resolution. Declarations of the plaintiff were in effect that the full amount had been subscribed, and that he was good for all his subscriptions, and would pay them. The plaintiff contended that there was no mistake in making the payments to the treasurer individually, since the subscribers intended an obligation to him individually because of a personal liability he had assumed, or was to assume for the college. *Held* that the evidence was not of such a clear, precise and indubitable character as to justify the court, as a chancellor, to reform the subscription paper, so as to make the subscriptions payable to the college.

Argued Nov. 1, 1901. Appeal, No. 122, Oct. T., 1901, by defendant, from judgment of C. P. Lebanon Co., June T., 1900, No. 269, on verdict for plaintiff in case of E. Benjamin Bierman v. Lebanon Valley College. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit to recover a balance of salary. Before EHRGOOD, P. J.

At the trial it appeared that plaintiff claimed to recover $1,380, balance of salary due to him as president of the Lebanon Valley College. The claim was not disputed, but the defendant asserted the right to set off against the claim the sum of $950 alleged to be due on the following subscription paper:

" EXHIBIT No. 1.

"June 18, 1891.

" We the undersigned do hereby for ourselves, our heirs, and executors or administrators and assigns and agree to pay to H. H. Kreider, within ninety days from this date, the amount set opposite our respective names, provided the full sum of $2,000 be secured:

" H. H. Ulrich, $150.

H. H. Kreider, $150, received $25.

L. L. Swartz, $100, paid.

A Friend, paid by D. Eberly, $50.

By C. L. Stearn, $100.

Isaac H. Albright, $25.00, paid $10.

A. P. Funkhouser, $15.00.

S. D. Faust, $25.00.

Isaacs B. Haak, $50.00, paid.

Chas. B. Retter, $25.00.

J. H. Von Neida, $50.00, paid.

E. Benj. Bierman, $50.00, paid.

Pennsylvania Conf. per I. H. Albright, $270.00.

E. Benj. Bierman, $975.00, paid on $25.

" (Indorsement in Bierman's handwriting): ' $2,000 sub-scribed by various persons June 18, 1891.' "

Mr. Capp: We now offer in evidence Exhibit No. 1, the evidence now in the cause being sufficient under the rules of law to show that it was intended by the parties to be made payable to the order of H. H. Kreider, treasurer of Lebanon Valley College, and was made payable to H. H. Kreider individually by mistake; for the purpose of establishing one of the defendant's items of set-off in this case.

Gen. Gobin: We state our objection: First, because the evidence intended to be relied upon is not clear, precise and indubitable; it is the inference drawn by several gentlemen who have not seen or thought of the paper from the time of its execution until this time, and is contradicted by other gentlemen present, who testified that it was done presumably in the manner it was intended to be done by those who authorized its formation. It certainly is not such a recognition of a mistake as under the law a court would be justified in correcting upon the testimony adduced—it is not clear, it is not precise, it is not certain and definite and therefore cannot be accepted as amended. We might put in our third objection—

The Court: As to the statute of limitations?

Gen. Gobin: Statute of limitations and that it contains confidential subscriptions which reduces the amount below the sum desired to be raised, which made the subscription effective, and which under the law cannot be competent, therefore it never was a valid subscription.

The Court: The condition was not performed?

Gen. Gobin: Not performed.

The Court: Objection sustained, offer overruled, defendant excepts, bill sealed. [6]

Mr. Capp: The undisputed evidence in the case being that this instrument was executed by mistake, not conformable to the real intention of the parties and the evidence being suffi-

cient to rectify the error in accordance with the intention of the parties, we now offer in evidence the subscription, which in addition to the subsequent declarations made by the plaintiff, his payments thereon and his subsequent promises to pay, are, if credited by the jury, sufficient to establish one of the defendant's items of set-off.

Gen. Gobin : We renew all the objections we have repeatedly made. This is the offer just in another form and based upon no additional testimony whatever, leaves it just as it was, no reference at all in the minutes except what we have already had, simply a reiteration.

The Court : Objection to the former offer is now made?

Gen. Gobin : Yes, sir, all renewed.

The Court : Offer is overruled, exception to the defendant. [7]

H. H. Kreider, a witness called on behalf of the defendant, having been first duly affirmed.

Direct examination by Mr. Capp.

\* \* \* \* \* \* \* \*

" Q. Do you know whether this subscription list was gotten up for your benefit or for the benefit of the college, and do you further know whether Prof. Bierman knew what it was gotten up for ? "

Mr. McCurdy : Same objection.

The Court : Objection sustained ; offer overruled ; exception to the defendant. [8]

" Q. Do you know whether or not it was the intention of the parties to this subscription paper, as expressed at that meeting in the presence of the plaintiff to draw that paper as it now is, or is any material portion omitted therefrom, and, if so, what are the words ? "

Gen. Gobin : Same, objection.


The court charged as follows :

On the part of the defense it is admitted that $1,380 is due the plaintiff for salary and was due on July 31, 1897. [The set-off attempted to be introduced in this case we have ruled out for reasons that we are of opinion are fully warranted by the law. The alleged subscription, such that was attempted to be offered in evidence, on its face shows that there is not

a valid subscription of $2,000. The subscription on its face shows that it is a subscription, or a promise to pay, to H. H. Kreider, without any purpose whatever stated in the heading of the subscription, what it is to be for.] [17] [On the part of the defense it is attempted to show that this subscription is a subscription to Lebanon Valley College for the purpose of meeting an indebtedness that was due at the time when the alleged subscription was taken.

Under all the evidence in this case we are of the opinion that they cannot substitute a subscription to Lebanon Valley College for the purpose of paying an indebtedness in place of a subscription to Henry H. Kreider, or to H. H. Kreider, stating no purpose for which the subscription is taken.] [18] [We also are not fully convinced from all the testimony that on the question of the bar of the statute of limitation the evidence reaches the order of evidence that ought to be introduced in order to tell the bar of the statute of limitation.] [19] There were three or four witnesses called as to the removal of the bar of the statute of limitation. They have all differed in their testimony, and presumably all the conversations, or the conversation about the acknowledgment of the subscription and the alleged promise to pay, took place at the same time, and there is only one witness, and he testifies in the third person, as to a promise to pay.

Therefore, under all these circumstances, we have come to the conclusion that the alleged set-off cannot avail in this case. We have permitted the defendant to introduce all his testimony, or we have ruled upon their offers, made in different ways, and the case, so far as the defense is concerned, relative to the set-off, is so well on the record that if the court is wrong there will be no difficulty for the defendant to receive relief in a higher court, but [believing that the set-off attempted to be introduced in this case is not a valid set-off against this claim, we deem it our duty to say so to you and instruct you to find in favor of the plaintiff for $1,380, with interest from July 31, 1897.] [20]

Verdict and judgment for plaintiff for $1,652.55. Defendant appealed.

*Errors assigned*, among others, were (6–8) rulings on evi-

138 BIERMAN *v.* LEBANON VAL. COLLEGE, Appellant.

Assignment of Errors—Opinion of the Court. [20 Pa. Superior Ct.

dence, quoting the bill of exceptions. (17–20) Above instructions, quoting them.

*Thomas H. Capp*, with him *S. P. Light*, for appellant.—The evidence was sufficient to reform the paper: Huss v. Morris, 63 Pa. 367; Schotte v. Meredith, 192 Pa. 159; American Harrow Co. v. Swoope, 16 Pa. Superior Ct. 452; Finney v. Cochran, 1 W. & S. 112; Graff v. Pittsburg, etc., R. R. Co., 31 Pa. 489; Miller v. Hanover Junction, etc., R. R. Co., 87 Pa. 95; Shellenberger v. Patterson, 168 Pa. 30; Perkiomen Brick Co. v. Dyer, 12 Montg. 74.

*J. P. S. Gobin*, of *Gobin & McCurdy*, with him *George B. Woomer*, for appellee.—The evidence was insufficient to reform the paper: Boyertown Nat. Bank v. Hartman, 147 Pa. 562; Keller v. B. & O. R. R. Co., 10 Pa. Superior Ct. 240; Stine v. Sherk, 1 W. & S. 195; Spencer v. Colt, 89 Pa. 314; Rowand v. Finney, 96 Pa. 192; Stewart's App., 98 Pa. 377; Murry v. New York, etc., R. R. Co., 103 Pa. 37; Logue's App., 104 Pa. 136; Ott v. Oyer's Exr., 106 Pa. 17; Phillips v. Meily, 106 Pa. 536; Sylvius v. Rosek, 117 Pa. 67; Reno v. Moss, 120 Pa. 49, 67; Honesdale Glass Co. v. Storms, 125 Pa. 268; Boyertown Nat. Bank v. Hartman, 147 Pa. 558; Hoffman v. Bloomsburg, etc., R. R. Co., 157 Pa. 175.

OPINION BY RICE, P. J., April 21, 1902:

In this action, brought to recover a sum admittedly due the plaintiff, the defendant pleaded set off, and on the trial offered in support of its claim the following subscription paper dated June 18, 1891: " We the undersigned do hereby for ourselves, our heirs, and executors or administrators and assigns promise and agree to pay to H. H. Kreider, within ninety days from this date the amount set opposite our respective names, provided the full sum of $2,000 be secured."

Subscriptions for divers sums, amounting in the aggregate to $705, preceded that of the plaintiff for $50.00, then followed a subscription by another party for $270, and then another subscription by the plaintiff for $975, thus making the sum of $2,000.

To meet the objection, apparent on the face of the paper,

that it does not in terms, nor by implication, import an obligation to pay the sums subscribed to the Lebanon Valley College, for its use, the defendant attempted to show, that the purpose of the subscription was to raise money to repay a loan which H. H. Kreider, as treasurer of the college, was authorized to make to meet indebtedness then pressing, and that by mistake it was made payable to H. H. Kreider, instead of H. H. Kreider, treasurer of Lebanon Valley College. In support of this allegation the defendant proved the following facts: First, the plaintiff was president of the college and H. H. Kreider was its treasurer. Second, at a meeting of the board of trustees, held on June 16, 1891, the former reported as follows: "The financial condition of the college is embarrassing because of many persisting creditors. A careful perusal of the report of brother Haak, general manager, will not fail to furnish items for action on the part of the committee on finance and I will not prolong this report, because I feel that experience, wisdom, interest in the cause of education, and more especially in Lebanon Valley College, will enable you to determine upon under our present embarrassing conditions to make the institution a success." Third, at a meeting of the board held on June 18, the following action, recorded on the minutes, was taken: "H. H. Kreider, I. B. Haak and C. H. Stern were appointed to push subscriptions and obligations for the immediate relief of the college, no obligation being binding until $2,000 are raised." Fourth, at the same meeting, the plaintiff being present, the paper in question was drawn up by Mr. Stern, one of the members of the committee, and was then and there signed by some of the subscribers.

As to the foregoing facts the evidence is clear enough, but the same cannot be said of the evidence adduced in support of the allegation that the subscription was for the specific purpose of repaying a loan made by the college. Still less clearly does it show that it was the inducement for the making of such loan. True, some of the witnesses testified that Mr. Kreider was authorized to borrow $2,000 with which to pay debts of the college; and, that he did make such loan by having a note discounted at the Annville National Bank is sufficiently established by the testimony. But no minute of the board giving such authority was offered in evidence; and the testimony of the de-

fendant's witnesses leaves it uncertain, when the alleged authority was given—whether at the session of June 18 or at a previous session—as well as when the loan was made. And, whether Mr. Kreider gave his individual note, or the note of the college, is also left in uncertainty. In his direct examination, while evidently not very clear upon the subject, he gave it as his best recollection that it was not his individual note, but upon cross examination he gave the following testimony: " Q. Is it the fact or is it not that you and Prof. Bierman raised out of the Annville Bank on an accommodation note, signed individually, the sum of $2,000 on July 7, 1891? A. I don't remember. Q. Did you and Prof. Bierman raise any other money for any other purpose? A. I think I was on several occasions. Q. Did you at that time? A. That I don't know but I think we did, I don't know though." In the following year he submitted to the board a paper, apparently not signed as treasurer, but separate and distinct from his report as treasurer, in which he said : " According to your instructions of last year I borrowed $2,000, and said amount of $2,000 was assumed by different persons, of which amount $360 I have paid on the note in bank $350 and leaving $10.00 on hand." The note was renewed in bank from time to time until the plaintiff and Mr. Kreider ceased their official connection with the college, when the balance due on it, about $1,650, was merged with other notes in a single note given by the trustees, or the officers of the college. The testimony upon this matter of the merger of the note is not very clear, but it seems to be an undisputed fact that when it took place the plaintiff and Mr. Kreider were thereby released from any further liability upon it.

Two views as to the obligation intended to be assumed by the subscribers to the paper in question have been urged upon our consideration by counsel. One is that they intended to bind themselves to furnish to the college, the funds with which to discharge the loan that had been made or was then in contemplation; in which case, it is claimed, they would still be bound notwithstanding the subsequent change in the form of the indebtedness. The other view is that they intended an obligation to H. H. Kreider personally, because of the personal liability he had assumed, or was to assume; in which case his right, whether to absolute and unconditional payment, or to

indemnity only, would not pass by operation of law to the college or whomsoever might take his place upon the note in bank. If the former view be the correct one, then the paper, which the parties designed to express their intention, does not express it, or at least does not express it accurately, and therefore, it is claimed, should be reformed or treated as reformed.

The defendant's counsel argue that, as the paper was drawn at the meeting when the resolution was adopted, the natural inference is that it was drawn pursuant to the resolution, and that the intention of the subscribers was to assume the obligation which the resolution contemplated. It is to be noticed, however, that the paper makes no allusion to the resolution, that the scrivener was not called to explain how the alleged mistake was made, and that outside the resolution the evidence of what was said and done at the meeting is vague and unsatisfactory. It was clearly not competent to ask the witnesses, "What was the intention of the parties there present at the time when this paper was drawn as to whose order it was to be made payable to?" Spencer v. Colt, 89 Pa. 314 ; Juniata Building & Loan Assn. v. Hetzel, 103 Pa. 507 ; Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35 ; Commonwealth to use v. Julius, 173 Pa. 322. The court properly rejected such offers. There remained the unexplained discrepancy between the resolution appointing the committee and the subscription paper, but to presume a mistake, common to all the parties, from the mere failure of the latter to agree with the former is, obviously, not an easy matter. And, surely, no such inference as that above suggested can be drawn against those subscribers who were not present at that meeting ; and the evidence does not clearly show that all were present. In making this statement we have not overlooked the memorandum indorsed on the paper which seems to show that the full amount was subscribed on June 18; but it does not show that all the subscribers were present at the meeting. However, it may be as to the intention of those who were present, as to the understanding and intention of those who were not present we have no knowledge or means of knowledge except what the paper itself discloses. Without entering upon any unnecessary discussion of the general question of the validity of a gratuitous subscription, we think it clear that where such subscription was made on condition that a

certain amount be subscribed, the prima facie presumption aris-ing from the paper is, that it was intended that the prescribed amount should be subscribed for the same purpose; also, that the beneficiary was correctly named. Therefore, to reform such a paper so as to make it import an obligation to pay to a different beneficiary, and to furnish money for a different pur-pose from that expressed in the paper, it is, obviously, not sufficient to show that some of the subscribers intended to as-sume such obligation, leaving the intention of the other sub-scribers to be determined by the paper itself.

Considerable stress is laid by the defendant's counsel upon subsequent declarations and admissions made by the plaintiff. I. H. Haak, one of the subscribers, as well as a member of the committee, testified that he received notice " that the $2,000 on that subscription was now secured, consequently my sub-scription of $50.00 was due and payable to the treasurer," but whether this notice came from the plaintiff or from Mr. Kreider he was unable to say. Therefore, this part of his testimony establishes no admission on the part of the plain-tiff. As to what occurred between him and the plaintiff he testified as follows: "I went to Annville, saw Mr. Bierman, asked him to see this paper. . . . . Q. Did he show you that paper? A. Yes, sir, I saw his subscription for $975. Q. Whose subscription? A. President Bierman's, and I asked him how it was about this last subscription, $975. He said it was all right; he said he will have to pay it if he can't collect it, and on the strength of that I paid my $50.00 and turned over Von Neida's. Q. On the strength of what? A. That re-presentation that his subscription was bona fide." Other de-clarations to other persons to the effect that the full amount of $2,000 had been subscribed, and that he was good for all his subscriptions and would pay them were also shown. These latter declarations stand on a different plane from the declara-tions alleged to have been made to Mr. Haak, and are effec-tual only as evidence of the facts admitted, not to create an estoppel. But upon the question whether there is sufficient evidence to warrant a reformation of the subscription contract, the same objection applies to both. It was well expressed by the learned trial judge as follows: "Expressions made by the plaintiff to these different witnesses that it was a bona fide

subscription is reconcilable with the paper itself that it was a subscription to H. H. Kreider." We fail to see how such expressions can estop him to deny his liability to Lebanon Valley College. The utmost that can be claimed for them, under the evidence, is, that they estop him to deny the validity of the paper as it was written; and that they are sufficient for that purpose, is not clear. But we need not go into that question.

A person who seeks to rectify a deed on the ground of mistake must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable continued concurrently in the minds of all parties down to the time of its execution; and, also, must be able to show exactly and precisely the form to which the deed ought to have been brought. To reform a contract, and then enforce it in its new shape, calls for a much greater exercise of the power of a chancellor than simply to set the transaction aside. Reformation is a much more delicate remedy than rescission. Hence, in order to justify a decree for reformation in cases of pure mistake, it is necessary that the mistake should have been mutual: Bispham's Eq. (5th ed.) sec. 469. In view of the fact that this subscription was conditioned upon the whole amount being secured, these principles are applicable here. After a lapse of nine years an attempt to reform such a paper so as to make it import an obligation to pay to another person than the person named, for a different purpose or for a purpose not designated in the paper itself, must necessarily be attended with difficulties, and properly so. It is not the duty of the court to minimize them as far as possible and then cast the entire responsibility upon the jury. If mistake is alleged, such attempt can only be successful where the evidence of mistake is clear, precise and indubitable. To create a doubt whether the paper fully and accurately expresses the common intent of all the subscribers is not sufficient. It is true, under our practice in Pennsylvania, reformation or its equivalent may be accomplished by common-law forms. But the fact remains that the relief claimed is purely equitable, and the judge ought not to submit the case to the jury unless the evidence is such that he would feel himself bound as chancellor to reform the instrument: Phillips v. Meily, 106

Pa. 536.   The learned trial judge held that the evidence was not sufficient for that purpose, and in that conclusion we concur.

All the assignments of error are overruled and the judgment is affirmed.