# Reynolds, Appellant, *v.* Craft.

*Equity—Specific performance—Reformation of contract.*

1. Where a plaintiff comes into a court of equity seeking to enforce the performance of a contract that is oppressive and unconscionable, a chancellor may withhold his aid even where the proof of the defendant shows little more than improvidence, surprise or even mere hardship. In such cases a court of equity may properly adhere to the ancient maxim that a decree is of grace, not of right. But where one seeks the active interposition of a court to reform a contract reduced to writing and signed and sealed by the parties, a very different principle controls. To reform a contract, and then enforce it in its new shape, calls for much greater exercise of the power of a chancellor than simply to set the transaction aside.      Reformation is a much more delicate remedy than rescission. ·

*Equity—Equity pleading—Presumption.*

2. It is a fair presumption that a plaintiff who files a bill in equity, states his case as favorably for himself as the facts will warrant.

*Equity—Reformation of contract—Parol sale of land—Statute of frauds.*

3. A court in passing upon a bill in equity will not construe a parol bargain for the sale of land as a final bargain, although so averred, where the entire bill and the transaction therein described show plainly that the bargain was not final, but was to be supplemented by a written contract.

4. A parol sale of lands cannot be construed as within the exception to the statute of frauds, where it appears that no substantial part of the purchase money was paid at the time, or in pursuance of the alleged sale, and that while possession was shown, the only averment as to improvements was that the purchaser "commenced to make valuable improvements."

5. A bill in equity to reform a written agreement for the sale of land on the ground that the contract contained a reservation of minerals contrary to the plaintiff's understanding, cannot be sustained where the plaintiff does not deny that the contract when and as she signed it contained the reservation, nor allege any mistake of the parties or the scrivener, or any fraud or deception practiced upon her by the defendant. In such a case there is no ground for reforming the contract, because the defendant gave plaintiff an untruthful reason for his determination to retain the mineral rights. He was not required to give any.

6. A court of equity will not reform a written agreement on an averment that the plaintiff, when she signed the contract, was suffering from illness, and by reason of it, "unable to fully realize and understand the terms and conditions of the written contract," where she does not disclose what her understanding of the paper then was, nor aver that it was then different from what it is now.

Argued March 3, 1908. Appeal, No. 14, Jan. T., 1908, by plaintiff, from decree of C. P. Susquehanna Co., Aug. T., 1906, No. 220, dismissing bill in equity in case of Adelia M. Reynolds v. A. L. Craft. Before RICE, P. J., PORTER, HENDERSON, HEAD and BEAVER, JJ. Affirmed.

Bill in equity to reform a contract and specifically enforce it. Before SEARLE, P. J.

The bill was as follows:

1. That she is a resident of the township of Herrick, Susquehanna county, Pennsylvania, and the defendant is also a resident of the same place.

2. In September, 1904, your orator was residing in Wayne county, state aforesaid, and was partially recovering from a serious illness, and the defendant, A. L. Craft, then a practicing physician, was professionally treating her, and during the various professional calls that the defendant made upon your orator he talked of selling the R. P. Patterson farm that he owned to her, located at Herrick center, township, county and state aforesaid.

3. On October 25, 1904, a final bargain was made between your orator and the defendant, Dr. A. L. Craft, and $10.00 was paid to close the deal. The bargain was that Dr. Craft, the defendant, was to sell and convey to your orator all the land that he purchased of R. P. Patterson, north of the Newbury Turnpike road, situated in the aforesaid township, county and state, for the sum of $2,900. Ten dollars was paid down, $2,790 was to be paid upon execution and delivery of the written contract, and $100 on October 25, 1905, at which time a good and sufficient deed of general warranty was to be given to your orator for said premises. The written contract was to be immediately drawn and furnished by the said defendant, A. L. Craft, in accordance with the above terms.

4. In pursuance of said agreement your orator and her family moved upon the premises so purchased and took possession of the same on November 17, 1904, and commenced to make the necessary repairs and valuable improvements thereon, and on November 25, 1904, the defendant, A. L. Craft, produced a written contract, dated October 25, 1904, and presented the same to your orator, who was still ill and confined the greater portion of the time to her bed, and was still being professionally treated by said defendant. Your orator at the time was so impaired in health and body that she was unable to fully realize and understand the terms and conditions of the written contract, but she noticed that something was stated in said written contract about a mineral reserve and she spoke and protested against any reservation of that kind, or any other being made. The defendant replied that since he had made the bargain for the sale of this property to your orator, that he had examined his deed from R. P. Patterson, which reserved the mineral, and for that reason, and that reason only, did he wish to make any reservation in the written contract.

Your orator objected to signing the written contract at this time with said mineral reservation therein, as it was not mentioned in the original agreement, but after the defendant, A. L. Craft, assured her that said reservation was in his deed from Patterson and for that reason he could not convey the same to her, and that she could rely upon what he said, and at this time

your orator having explicit faith in what the said defendant said to her, and relying upon what was said to her in relation to said reservation, and not having had any opportunity at that time to ascertain the truth or falsity of such statement, as he insisted that said contract should then be signed and the $2,790 paid, she, under those circumstances, in her weak and sick condition, signed a written contract (a copy of which is hereto attached) and paid $2,790 to the said defendant.

5. A short time previous to October 25, 1905, your orator for the first time learned that the said defendant had fraudulently misrepresented to her that there was a mineral reservation in the deed from R. P. Patterson to him of these premises; that he secured the signature of your orator to the written contract, and $2,790, on November 25, 1904, by such fraudulent misrepresentations, contrary to the original bargain for such land made on October 25, 1904. There is no mineral reservation in the deed from R. P. Patterson to defendant of these premises.

6. On October 25, 1905, in pursuance of the original agreement made between defendant and your orator, she paid him $100, the balance of the purchase money for said premises, and demanded a deed for the same in pursuance to the original agreement, which the defendant has neglected and refused to deliver.

### PRAYER.

1. That the defendant be directed to prove all the facts alleged in this bill denied by him.

2. That the written contract that bears date October 25, 1904, but not executed until November 25, 1904, attached to this bill, be reformed and modified by striking out of the same the following portion, to wit: "Except, the said A. L. Craft, M. D., reserves in full, all coal and mineral, oil or gas, with right to prospect, and mine the same, contained on or in above described land as deemed necessary to prepare the same for market."

3. That the defendant be ordered and directed to make and deliver to your orator a good and sufficient deed of general warranty, for said premises so purchased.

4. That such other and further relief may be granted to the complainant as the nature of the case may demand.

### COPY OF WRITTEN AGREEMENT.

"HERRICK CENTER, October 25th, 1904.

"This agreement, made and executed the twenty-fifth day of October, one thousand nine hundred and four, between Dr. A. L. Craft, of Herrick Center, Susquehanna County, Pa., of the first part, and Mrs. Adelia M. Reynolds, of Pleasant Mount, Wayne County, Pa., of the second part.

"Witnesseth, That the said party of the first part, for and in consideration of the sum of twenty-nine hundred dollars (to him promised to be paid), of which the sum of twenty-eight hundred dollars is now paid, the receipt of which is hereby acknowledged, and the remaining one hundred dollars is hereby agreed to be paid as follows: The remaining one hundred dollars to be paid one year from date of this contract, viz.: October 25, 1905.

"When a deed hereinafter mentioned is given, hath contracted, and agreed to sell to the said party of the second part, all that certain piece, parcel or tract of land situated in the town of Herrick, County of Susquehanna and State of Pennsylvania, aforesaid, known and described as follows: Bounded on the south by Newburg turnpike and lands of E. Hoel and School House lot; on the east by lands of A. L. Craft, M. D., and Daniel Gettle; and on the north by lands of Ira Curtis and C. M. Harding; on the west by public highway and lands of A. L. Craft, and on the southwest by lands of A. J. Cawley, Mrs. Leroy Tanmer, Emery Miller and A. L. Craft.

"The said party of the first part agrees to execute and deliver to said party of the second part, a deed, with full covenants: Except, the said A. L. Craft, M. D., reserves in full, all coal and mineral, oil or gas, with right to prospect, and mine the same, contained on or in above described land as deemed necessary to prepare same for market. Provided, and upon condition nevertheless, that the said party of the second part, her heirs and assigns, pay to the said party of the first part, his heirs and assigns, for the said land, the sum of twenty-nine hundred

dollars, lawful money of the United States, in the way and manner following, to wit:

"Twenty-eight hundred dollars when possession is given and the remaining one hundred dollars to be paid October 25, 1905. And the said party of the second part, for himself, his heirs, executors, and administrators, doth covenant and agree, to and with the said party of the first part, his heirs and assigns, that the said party of the second part, will pay the said several sums as they become due, without any deduction for taxes or assessments whatever, and it is further agreed between the parties to these premises that if default be made in fulfilling this agreement or any part thereof, on the part of said party of the second part, then, and in such case, the said party of the first part, his heirs and assigns, shall be at liberty to consider this cancelled, and the money already paid forfeited, and to dispose of the said land to any other person in the same manner as if this contract had never been made."

The defendant filed a demurrer which the court sustained, and dismissed the bill.

*Error assigned* was decree dismissing the bill.

*T. J. Davis,* for appellant, cited as to the statute of frauds: McGibbeny v. Burmaster, 53 Pa. 332; Eberly v. Lehman et. al., 100 Pa. 542; Nesbitt v. Tarbrake, 30 Pa. Superior Ct. 460.

Cited as to fraud: Jack v. Hixon, 23 Pa. Superior Ct. 453; Smith v. Richards, 38 U. S. 26; Graft v. Loucks, 138 Pa. 453; Brophy v. Hagan, 12 Pa. C. C. Rep. 365.

*Wm. D. B. Ainey,* for appellee.

OPINION BY HEAD, J., February 26, 1909:

To the bill of the plaintiff in this case the defendant filed a general demurrer. The learned court below sustained the demurrer and dismissed the bill. The bill contained two specific prayers: (a) that a written contract, admittedly signed and sealed by the plaintiff, be radically reformed; (b) for a decree enforcing the specific performance of the contract after being thus reformed.

It is doubtless true that where a plaintiff comes into court seeking to enforce the performance of a contract that is oppressive and unconscionable, a chancellor may withhold his aid even where the proof of the defendant shows little more than "improvidence, surprise or even mere hardship:" Lynch's Appeal, 97 Pa. 349. In such cases a court of equity may properly adhere to the ancient maxim that a decree is of grace, not of right. But where one seeks the active interposition of a court to reform a contract reduced to writing and signed and sealed by the parties, a very different principle controls. It is clearly stated in Bierman v. Lebanon Valley College, 20 Pa. Superior Ct. 133, in the following language by RICE, P. J., thus: "To reform a contract, and then enforce it in its new shape, calls for a much greater exercise of the power of a chancellor than simply to set the transaction aside. Reformation is a much more delicate remedy than rescission."

It is a fair presumption that a plaintiff, who files a bill, states his case as favorably for himself as the facts will warrant. Keeping in view the principle above noted and this presumption, a brief examination of the bill will demonstrate, we think, that the learned court below committed no error.

The bill does not aver an actual parol sale of the land which both of the parties then regarded as a completed transaction; but rather a preliminary negotiation in which the parties not only contemplated but expressly provided for a formal, written contract of sale, upon the execution of which, the bulk of the purchase money was to be paid. We do not overlook the fact that the bill declares that "On October 25, 1904, a final bargain was made between your orator and the defendant and ten dollars was paid to close the deal." But the entire bill and the transaction therein described show plainly enough that the bargain of October 25 was not final, but was to be supplemented by a written contract. This written contract which was, and was intended to be, final, which bound the parties and fixes their rights—unless it be reformed as prayed for—was signed about twenty days later.

Even if we concede that the bill fairly and clearly averred a parol sale it was a sale forbidden by the statute. No substan-

tial part of the purchase money was paid at the time or in pursuance of the alleged sale; it was paid, as it was agreed to be, at the time of the execution of the written contract and in exact accordance with its terms. Possession is alleged to have been taken under the parol arrangement, but the only averment as to improvements is that plaintiff "commenced to make valuable improvements." Such vague and general averments fall far short, in our judgment, of disclosing a parol sale that could, without disregarding well-established principles, be considered an exception to the general rule laid down in the statute.

But the bill itself reveals an even more serious obstacle in the way of the plaintiff. She complains that in the contract she signed and upon which she paid her money, there was a reservation in favor of the grantor of certain mineral rights in the land, whereas she understood and expected that she was to take the entire estate in fee. She does not deny that the contract when and as she signed it contained the reservation; she does not allege that this was the result of a mistake of the parties or the scrivener; she does not assert that by reason of any fraud or deception on the part of the defendant her eyes were blinded as to the fact that the reservation was there, nor that by such means she was misled as to the effect and significance the law would attach to it. She was not then bound to take any estate less than the fee, if that was her understanding of the preliminary arrangement. She had only invested, up to that time, $10.00, which she could have recovered if the defendant had obtained it on the promise to sell more than he was afterwards willing to convey. Having thus perfect freedom of will and action; with her money still in her possession and under her control; under no legal obligation to contract if she was not getting what she wished to buy; knowing of the reservation and having, as the bill avers, "protested against any reservation of that kind, or any other being made," she voluntarily signed the contract, paid over to the defendant $2,790 of the purchase money, retained the possession of the property for a year and then made the final payment of $100 called for by the contract she had signed.

By her bill she asked the learned court below to reform and remake this contract, by striking out the entire reservation, because, as she alleges, the defendant gave her an untruthful reason for his determination to retain the mineral right. He was not required to give any. We may concede the universality of the moral obligation to speak the truth or remain silent. But there are many breaches of this obligation which courts can neither prevent nor remedy. Nor is this foundation for the bill broadened or strengthened by the averment that the plaintiff, when she signed the contract, was suffering from illness and, by reason of it, "unable to fully realize and understand the terms and conditions of the written contract," because she does not disclose what her understanding of the paper then was, nor does she aver that it was then different from what it is now.

Without attempting any further elaboration of our views or any citation of authorities to support a conclusion that seems to us to need none, we deem it sufficient to say that we are all of the opinion this record discloses no reversible error and that the bill was properly dismissed.

Decree affirmed.