WE–MAC MANUFACTURING CO., Respondent,

v.

MID–STATE PETROLEUM EQUIPMENT, INC., Appellant.

No. WD 44985.

Missouri Court of Appeals, Western District.

March 24, 1992.

Stephen C. Scott, Columbia, for appellant.

Bernard J. Rhodes, Jacqueline L. Mixon, Kansas City, for respondent.

Before TURNAGE, P.J., and KENNEDY and BERREY, JJ.

BERREY, Judge.

Appellant appeals from the judgment entered against it in the sum of $14,167.83, in this court-tried case. The trial court also entered judgment for the respondent on appellant's counterclaim and appellant appeals.

Appellant alleges the trial court erred first in finding appellant had contracted for a 9′ × 25′ tank. Appellant next alleges the trial court erred in finding appellant did not have the right to reject the 9′ × 25′ tank. For its third point, appellant contends the finding of the trial court is against the weight of evidence. And finally, appellant contends the trial court erred in failing to award appellant damages on its counterclaim.

On September 11, 1990, John Dotson, a principal of appellant, phoned We–Mac Manufacturing Co. He talked with Richard Ramey, a member of respondent's sales staff. Dotson priced gasoline storage tanks and tie-down straps together with freight charges. According to Ramey they talked about two tanks, a 15,000 gallon tank, 11′ in diameter by 21′ long and a 12,000 gallon tank, 9′ in diameter by 25′ long. Ramey testified We–Mac manufactures two sizes of the 12,000 gallon tank, the 9′ by 25′ tank and a 8′ × 32′ tank. At trial, a written memo memorializing this conversation was introduced.

According to Ramey the two sizes of 12,000 gallon tanks were discussed with appellant. Ramey explained that the 9′ × 25′, 12,000 gallon tank could be delivered with the 15,000 gallon tank and save appellant the cost of a separate haul. Ramey explained that in Missouri the maximum length for a load is 53 feet. The 15,000 gallon tank and the 12,000 gallon tank that was 9′ × 25′ would fit the truck, as the total length would be about 46 feet. If the other 12,000 gallon tank was ordered the total length would be 53 feet, requiring a special permit to transport them.

Ramey testified that Dotson did not place an order on this date, but that an order was placed on September 12, 1990, over the phone by someone named Don with Dotson's company. Don proceeded to give Ramey a purchase order, number 2880, which Ramey entered on his shipping order sheet. According to the shipping

order, Don ordered a 15,000 gallon tank 11′ × 21′ and a 12,000 gallon tank 9′ × 25′. Following this oral phone agreement, appellant sent We–Mac a written order for an 11′ × 21′ tank and an 8′ × 32′ tank. On October 5, 1990, the tanks were delivered to appellant at his site in Mexico, Missouri. We are mindful that under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), the judgment of the trial court will be sustained on appellate review, "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.*

■ In its first point, appellant alleges the court erred in finding it contracted for a 9′ by 25′ tank. An appellate court defers to the trial court's determination even if the evidence might support a different conclusion in a court-tried case. *Price v. American Bank of St. Louis*, 793 S.W.2d 593, 598 (Mo.App.1990).

On October 6, Dotson called Ramey and told him he had shipped the wrong dimension 12,000 gallon tank. Due to labor and additional welds, the 8 foot diameter tank was more expensive than the 9′. This was discussed and the parties agreed to "split the difference in the cost." Appellant was to pay a second delivery charge. We–Mac picked up the 9′ diameter tank and placed it in its inventory. We–Mac wrote up the order as it had the previous order.

Ramey testified that an order form is always completed following receipt of the order. The 8′ tank was subsequently delivered to appellant on October 10, 1990. An invoice was prepared shortly after delivery of the tanks, however, the total invoice amount of $14,398.83, was not paid. Appellant's testimony was to the contrary. Appellant contended it had originally ordered an 8′ 12,000 gallon tank. Further, appellant alleged in its counterclaim that We–Mac did not deliver the proper size tank timely and as a direct and proximate result of the failure, appellant sustained additional construction site costs.

■ Respondent presented substantial evidence to support the trial court's determination. Mr. Ramey testified a 9′ × 25′

tank was ordered during a phone conversation. He supported this contention by producing a memorandum memorializing the substance of the conversation. Mr. Ramey also produced an order form which showed an order for a 9′ × 25′ tank as well as an 11′ × 21′ tank. The trial court has the ability to judge the credibility of the witnesses and is free to believe or disbelieve all, part, or none of the testimony of any witness. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo.1989). The trial court found appellant had contracted for a 9′ tank. We find no reason to disturb this finding on appeal. Appellant's point I is denied.

Points II and III of appellant's argument will be addressed together. Appellant alleges in Point II it could reject the order under § 400.2–607, RSMo 1986, and under Point III that in the alternative the trial court erred in holding appellant did not have the right to reject the order pursuant to § 400.2–207(2), RSMo 1986.

Section 400.2–207 of the Uniform Commercial Code (UCC) is applicable to this transaction and provides:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of this is received.

■ Appellant and respondent had reached an oral agreement and it was not changed because appellant sent a written confirmation containing different terms.

*Central Bag Co. v. W. Scott & Co.,* 647 S.W.2d 828 (Mo.App.1983). Since appellant and respondent are merchants a different term becomes part of the contract unless it materially alters the contract. The substitution of an 8′ tank for a 9′ tank is a material alteration, and therefore, did not become part of the original contract under § 400.2–207(2)(b).

Section 400.2–601, RSMo 1986, states in part:

If the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may,

    (a) reject the whole; or

    (b) accept the whole; or

    (c) accept any commercial unit or units and reject the rest.

To accept appellant's position we must conclude that the original contract was successfully altered by appellant. This we cannot do because such a position is contrary to the trial court's findings of fact, wherein the trial court found an oral contract had been formed under § 400.2–207, RSMo.1986. This finding was supported by the evidence and will not be disturbed on appeal. *Murphy v. Carron,* 536 S.W.2d at 32. The trial court is the judge of witness credibility, *T.B.G. v. C.A.G.,* 772 S.W.2d at 654.

The cost of labor in making the 8′ tank was $100 more than the 9′ tank and because of its length it required separate delivery at a cost of $350. This extra $450 charge constituted a material change. Respondent testified he did not see the appellant's change order until after the 9′ tank was delivered and appellant called to complain.

In *National Machinery Exchange, Inc. v. Peninsular Equip. Corp.,* 106 Misc.2d 458, 431 N.Y.S.2d 948, 29 U.C.C.Rep.Serv. 1505, an oral contract was entered into between defendant, a Michigan corporation, and plaintiff, a New York corporation. Plaintiff confirmed the sale in writing, but added to the invoice that New York would have jurisdiction of any dispute under the agreement. U.C.C. 2–207 provides that additional terms contained in a written confirmation of an agreement between mer-

chants become part of the contract if no objection is made within a reasonable time, unless they materially alter it. *Id.* at 458, 431 N.Y.S.2d at 948, 29 U.C.C.Rep.Serv. at 1505. The court held that a clause agreeing to jurisdiction in New York was a material change and, therefore, not binding.

In *United Coal & Commodities v. Hawley Fuel,* 363 Pa.Super. 106, 525 A.2d 741 (1987), the court held that the insertion of "price analysis" into a contract that had price and acceptance of coal based on "origin analysis" was a material alteration of the oral contract.

■ The alteration of the contract by appellant herein was material and respondent did not agree to it. The respondent did not agree that the 8′ tank should become part of the contract. The appellant may not reject under § 400.2–607, RSMo 1986. Appellant's Points II and III are denied.

■ For its fourth allegation of error, appellant contends the trial court erred in failing to award appellant damages in its set-off and counterclaim. The 15,000 and 12,000 gallon tanks were delivered October 5, 1990, to the site in Mexico, Missouri. About two hours after delivery appellant determined that it had received a 9′ × 25′, 12,000 gallon tank instead of an 8′ × 32′ tank. Appellant notified respondent that the tank was the wrong size. Respondent then manufactured and delivered an 8′ × 32′ 12,000 gallon tank to the site on October 10, 1990. In the interim Mexico received an extensive amount of rain. This rain caused damage to the excavation where the tanks were to be placed. The appellant proceeded to call in special equipment to set the tanks instead of waiting for the ground to dry. The trial court found this action of engaging in digging in the "middle of the rain and the mud" to be unreasonable.

The appellant cites § 400.2–715, RSMo 1986, as authorizing recovery in such situations.

Section 400.2–715, RSMo 1986, reads as follows:

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover, and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include:

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

In *Groppel Co. Inc. v. U.S. Gypsum,* 616 S.W.2d 49, 59 (Mo.App.1981), the court stated, "[a]s in any negligence action, recovery is limited to those damages proximately caused by the defective product and the buyer has the obligation to mitigate his damages."

Respondent's expert testified that had appellant waited for the ground to dry, appellant could have saved at least $10,000 and the trial court found that even the reasonable charges were not the respondent's obligation. Appellant's Point IV is denied.

Affirmed.

All concur.