## Seaboard Radio Broadcasting Corporation *v.* Yassky, Appellant.

454

Argued October 13, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Joseph Rappaport,* with him *Samuel Blank* and *Rappaport, Lagakos & Blank,* for appellants.

*Lawrence D. Biele,* for appellee.

OPINION BY WOODSIDE, J., August 30, 1954:

This appeal is from cross-actions which were consolidated.

David A. Yassky and Rose Yassky, his wife, hereinafter called the "Yasskys", filed an amicable action and confessed a judgment in ejectment and a judgment for money against Seaboard Radio Broadcasting Corporation, hereinafter called "Seaboard", under a lease between them. Seaboard thereupon obtained a rule to open the judgments. It also filed a Complaint in Equity whereby it sought reformation of that portion of a lease between the parties pertaining to payment of excess taxes, and excess water and sewer rent. After the Yasskys filed their answer, both actions were con-

solidated and tried in Court of Common Pleas No. 5 of Philadelphia County, which entered a decree opening the judgments and reforming the lease. From this decree the Yasskys appealed.

It appears from the record that Seaboard owned premises known as 1427 Walnut Street, Philadelphia, and occupied the third and fourth floors of the building. June 18, 1946 Yasskys and Seaboard entered into an agreement of sale whereby the Yasskys agreed to purchase the aforesaid premises, and a lease agreement whereby they leased to Seaboard the floors then occupied by Seaboard. The agreement of sale which was then executed by the Yasskys included in its terms the following:

"It is a condition of this sale and the parties hereto hereby agree that at time of settlement, Seller and Purchaser shall enter into a lease agreement in the form attached hereto and made part hereof wherein Purchaser shall lease to Seller the third and fourth floors of the premises herein described for a term of ten years from the date of settlement at the rental of One Dollar ($1.00) per year." ~~Such lease agreement shall be in recordable form and shall be recorded at Seller's expense.~~

Paragraph 6 of the lease contained the following provisions:

"(b) Lessee further agrees to pay as rent in addition to the minimum rental herein reserved all taxes assessed or imposed upon the demised premises and/or the building of which the demised premises is a part during the term of this lease, in excess of and over and above those assessed or imposed at the time of making this lease . . ."

"(d) Lessee further agrees to pay as additional rent, if there is a metered water connection to the said premises, all charges for water consumed upon the demised

premises in excess of the yearly minimum meter charge . . ."

The assessed valuation of 1427 Walnut Street was raised by the City of Philadelphia for the years 1947, 1948, 1949 and 1950, and the amount of taxes and water rents paid was in excess of 1946, the year when the lease was executed. In 1950 demand was made on appellee to pay the excess. When payment was refused, judgment for the amount claimed was entered by confession under the terms of the lease.

The relator alleged in his bill that if the aforesaid lease be construed to impose liability upon plaintiff for excess taxes, water and sewer rents, it is the result of a mutual mistake of the parties or a fraud committed by the defendants upon the plaintiff at the time of the execution of the lease.

The Chancellor found as a fact that the "lease failed to express the intention of the parties as to the rental through mistake or fraud;" said, "a mistake of fact is ground for reformation" and "parole evidence is admissible to establish a mistake of fact;" concluded "the lease failed to express the intention of the parties due to mistake", and entered a decree nisi reforming the lease by deleting subsections (b) and (d) of paragraph 6 of the lease agreement.

Upon exceptions the court en banc approved the Chancellor's conclusions and entered the following decree:

"And now, to wit, this 5th day of November, 1952, it is ordered, adjudged and decreed that sub-paragraphs (b) and (d) of paragraph 6 of the lease agreement be deleted and made to conform to the rental specified in the agreement of sale, viz: a rental of one dollar per year.

"It is further ordered that the rule to open the judgment for the sum of $2,390.20 entered in Court of Com-

mon Pleas No. 4, December Term, 1950, No. 322, be made absolute.

"It is further ordered that the rule to open the judgment in ejectment in Common Pleas Court No. 4, as of December Term, 1950, No. 322, be made absolute."

It is agreed by appellant that the judgment confessed in ejectment must be stricken as no condition of the lease has been broken by Seaboard even though Seaboard were liable for the additional rent. A covenant to pay rent is not a condition. *Williams et al. v. Notopolos,* 259 Pa. 469, 103 A. 290 (1918).

Where an agreement is reduced to writing without any fraud or mistake, the writing is not only the best, but the only, evidence of the parties' agreement. *Martin and Monroe v. Berens,* 67 Pa. 459, 463 (1871); *Irvin v. Irvin,* 142 Pa. 271, 287, 21 A. 816 (1891).

The terms of such written agreement cannot be changed, added to or subtracted from by parole evidence unless fraud, accident or mistake be averred. *Gianni v. Russell & Co. Inc.,* 281 Pa. 320, 323, 126 A. 791 (1924).

The plaintiffs' bill alleges that "there was a mutual mistake or a fraud committed by the defendant upon the plaintiff." The Chancellor's 12th finding of fact was "The lease failed to express the intention of the parties as to the rental through mistake or fraud." His third conclusion of law was, "The lease failed to express the intention of the parties due to mistake." He did not make any finding that the mistake was mutual.

"The mistake, to be rectified, must be mutual existing in the minds of both parties." *Coppes v. Keystone Paint & Filler Co.,* 36 Pa. Superior Ct. 38 (1908); *Bierman v. Lebanon Valley College,* 20 Pa. Superior Ct. 133 (1902); *Boyce v. Hamburg-Bremen Fire Insurance Co.,* 24 Pa. Superior Ct. 589 (1904); *Bosler v.*

*Sun Oil Company et al.,* 325 Pa. 411, 421, 190 A. 718 (1937). If the mistake is not mutual, but unilateral and is due to no fault of the defendant, but to the plaintiff's own negligence reformation of the lease was not justified. *Marmon Phila. Co. v. Blocksom,* 103 Pa. Superior Ct. 542, 157 A. 510 (1931).

It is true that the mere denial by the defendant that any error was made does not in itself prevent the finding that the mistake was mutual where the evidence supports the fact that it was. *Baab v. Houser,* 203 Pa. 470, 53 A. 344 (1902); *Radnor Building & Loan Ass'n. v. Scott et al.,* 277 Pa. 56, 120 A. 804 (1923). Where there is mistake on one side and fraud on the other, a written agreement can be reformed. *Cook v. Liston,* 192 Pa. 19, 21, 43 A. 389 (1899).

But the testimony to establish the mistake must be clear, precise and indubitable, and of such weight and directness as to carry conviction to the mind. *Graham v. Carnegie Steel Co.,* 217 Pa. 34, 66 A. 103 (1907); *Bosler v. Sun Oil Company et al.,* supra.

The evidence here shows that a member of Albert M. Greenfield Company, a real estate broker's firm which was representing Seaboard, approached the Yasskys, and after some preliminary discussion between the agent and Yasskys the principals met for the first time in the office of Seaboard's agent on June 18, 1946. There the Yasskys were presented with an agreement of sale and a lease which had been prepared by Seaboard's agent. The agreement and lease were then examined by the Yasskys and their attorney and signed by them.

Mrs. Yassky testified concerning this as follows:

"A. We read the lease in Mr. Pillion's office. We signed it and gave it to them. They sent it back to us a month later.

. . . .

"And whatever papers there was in Mr. Pillion's office, my lawyer read them and I read them. Mr. Harron's lawyer was there. We signed it and gave it to them. They were to return it to us. We never saw it until that minute. We read it and then we signed it. It took them a month to send us back all the papers. They had gotten the papers up. We left it up to the Greenfield Company."

The Yasskys both testified that they understood Seaboard would pay the excess taxes.

Mr. Pillion, who was representing the real estate firm which was acting for Seaboard, testified that he had prepared the lease but that nothing had been said to or by the Yasskys about excess taxes and water rent.

The appellee makes much of the failure of the Yasskys to make demand for the excess taxes and water rent until several years after they were assessed, but the Yasskys explain this on the ground they had not paid the taxes, and assumed they could not collect from Seaboard until they paid the city.

To reform a written document on the basis of such evidence as is before us in this case would do great violence to the Supreme Court's expression of intent "to stand for the integrity of written contracts." *Gianni v. Russell & Co. Inc.*, supra, p. 325.

There was insufficient evidence to establish mutual mistake.

Nor is there merit to the contention that this is an effort to make the writing conform to a contemporaneously executed written agreement.

Under the above quoted provision of the agreement of sale the parties agreed to "enter into a lease agreement *in the form attached hereto and made a part hereof* wherein purchaser shall lease," etc. (Italics supplied) The lease was on a printed form but the description of the premises to be leased, the terms of the lease,

and the rental had blank places that had to be filled in, and reference to them was made in the agreement of sale. The lease was attached—was a part of the agreement of sale—was contemporaneously executed and the evidence did not warrant reformation of it.

Although we think the court erred in reforming the lease, we agree with it that both judgments should be opened. Sub-paragraph "d" quoted above provides for the payment by the lessee only "for water consumed upon the demised premises," and only "if there is a metered water connection to the premises." The premises referred to are the third and fourth floors. The Yasskys are attempting to collect for water rent for the entire building and admit there is no separate meter for the premises rented to Seaboard. Although it may not be important the evidence shows that an air-conditioning system installed for the first floor takes so much water that Seaboard can frequently get no water in its premises, and that under any circumstances their use of water is exceedingly small. In light of the evidence we cannot see how Yasskys can recover anything under sub-paragraph "d".

There is an ambiguity in sub-paragraph "b" of the lease relating to the payment of excess taxes. The lessee promises to pay all excess "taxes assessed or imposed upon the demised premises and/or the building of which the demised premises is a part." Which is meant—"and" or "or"?[1] If it is "or" which is it, the

---

[1] The use of "and/or" in contracts, statutes and other legal documents has been frequently condemned in strong language. In *Bell v. Wayne United Gas Co.*, 116 W. Va. 280, 298, 181 S. E. 609, 618 (1935) it was said: "The involvements of the contracts are accentuated by the frequent use of the baffling symbol 'and/or'—a disingenuous modernistic hybrid, inept and irritating." The great majority of courts do all in their power to discourage its use. *Drummond v. City of Columbus*, 136 Neb. 87, 285 N. W. 109 (1939)

"demised premises", which are the third and fourth floors, "or" the entire building?

The Yasskys entered judgment for the excess taxes assessed on the entire building. During the time in question Yasskys occupied and improved the first floor, air-conditioning it and putting on a new front. If there was an increased assessment these improvements undoubtedly had something to do with it, maybe they were the sole reason. Furthermore, for one to contract to pay excess taxes on assessments of property over which he had no control and only the most indirect interest would be so strange and unusual that when the contract is as confusing as the one before us we must conclude it was not intended.

From the record before us it appears that the form of lease here in question is one frequently used in the downtown area of Philadelphia. Suppose the lessor would use the same form for the two or three tenants he now has in the building; or suppose the same form of lease would be used for a dozen or a hundred tenants? It could hardly be contended that it was intended that each tenant was to pay the landlord his excess taxes on the entire building.

---

118 A. L. R. 1367. In *Employers Mutual Liability Ins. Co. v. Tollefsen*, 219 Wis. 434, 263 N. W. 376, 377 (1935) the court seemed to be quite irritated at the use of the "thing" for it said: "It is manifest that we are confronted with the task of first construing 'and/or,' that befuddling, nameless thing, that Janus-faced verbal monstrosity, neither word nor phrase, the child of a brain of some one too lazy or too dull to express his precise meaning, or too dull to know what he did mean, now commonly used by lawyers in drafting legal documents, through carelessness or ignorance or as a cunning device to conceal rather than express meaning with view to furthering the interest of their clients."

See also American Bar Association Journal for July 1932 and September 1932; *State v. Douglas*, 339 Mo. 187, 95 S. W. (2d) 1179 (1936).

It is our opinion that the language of the provision in question applied to the facts of this case should be interpreted to mean that the tenant agreed to pay all taxes assessed or imposed on the third and fourth floors of the building in question in excess of and over and above those assessed or imposed to the time of the making of the lease.

If (after taking into consideration the rental value of the premises demised in the lease, and the rental value of the balance of the building, any increase in assessments brought about by improvements to the part demised and the other part of the building, any general increase in assessments or increase in taxes made during the time in question,) the parties cannot agree on what excess taxes, if any, are applicable to the premises demised in the lease agreement, it then becomes a matter for determination by the court below.

The part of the decree reforming the lease agreement is reversed.

The part making absolute the opening of the judgment for the sum of $2,390.20 is affirmed, and

The part making absolute the rule to open the judgment in ejectment is affirmed.

Each party to pay his own costs.