525 A.2d 741

**UNITED COAL & COMMODITIES CO., INC., a Corporation**

v.

**HAWLEY FUEL COAL, INC., a Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 22, 1987.

Filed April 9, 1987.

Reargument Denied May 19, 1987.

Gregory S. Olsavick, Altoona, for appellant.

Richard C. Schomaker, Pittsburgh, for appellee.

Before BROSKY, DEL SOLE and CERCONE, JJ.

DEL SOLE, Judge:

For our consideration is an appeal following a jury verdict in Appellee's favor. The underlying action concerns a contract dispute over the sale of coal by Appellee-seller to Appellant-buyer. We affirm.

Appellant claims that the trial court erred in refusing to grant its Motion for a New Trial since the jury verdict was contrary to both the weight of the evidence and to the law. In a related vein, it is argued that the trial court erroneously denied Appellant's Motion for a Judgment N.O.V. in that the evidence was insufficient to support the verdict.

Our scope of review of the trial court's denial of these motions is firmly established. In considering the trial court's decision on a motion for judgment n.o.v., we must view the evidence in the light most favorable to the verdict winner and draw all reasonable inferences and resolve all conflicts in testimony in that party's favor. By comparison, in reviewing a trial judge's action on a motion for a new trial, we must consider all the evidence. A new trial should be granted only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. However, we will not reverse the trial court's determinations in this regard absent an abuse of discretion. *Burch v. Sears, Roebuck and Co.*, 320 Pa.Super. 444, 449, 467 A.2d 615, 618 (1983) (citations omitted).

With these principles guiding our analysis, we turn to the facts *sub judice.* Appellee instituted an action against Appellant for breach of contract in refusing to pay the balance due for coal sold to Appellant. Both parties agree that they reached an oral agreement on the sale of the coal. However, Appellee argued successfully at trial that the oral agreement constituted a contract in which the price of the coal shipped would be determined by a coal analysis conducted at the place of origin. Appellant alleges to the contrary that the terms of the purchase orders sent to Appellee, subsequent to the oral agreement, were controlling. By these terms, the coal analysis was to be conducted at the pier, i.e., the place of destination. A coal analysis at each point divulged that the pier price was less than the original price. Appellant paid the lower destination price which resulted in Appellee's suit for the difference. Following a jury trial, a verdict was rendered for Appellee.

Our disposition of the instant case entails a two-pronged analysis of the legal and factual issues raised. On the first prong, we must examine the oral agreement reached between the parties to determine whether an oral contract was formed, and if so, what were its terms. The second prong involves the legal effect of the purchase orders sent to Appellee. Inasmuch as such writings fall within the ambit of § 2207 of the Uniform Commercial Code, we shall ascertain whether or not these terms became part of the original contract.

During trial, witnesses were called to testify concerning the oral negotiations for the coal sales. Appellee's witness, Mr. Sedlak, testified to the effect that an oral agreement was struck between himself and Appellant's agent in which the price of the coal would be determined by testing at the point of origin. The witness stated that, by implication, the parties agreed to have the coal analysis conducted at Appellee's tipple. (N.T., 28). Further, Mr. Sedlak related that, in instances where there is no discussion as to where the coal is to be tested, the custom of the industry is to have it sampled where it is loaded. (N.T. 21). Likewise, Mr. Sed-

lak expressed that, had Appellant's agent told him that the pier analysis was to be the prevailing cost, Mr. Sedlak would not have entered into the oral contract. (N.T., 27).

Mr. Donahue, an agent for Appellant, testified that there was no agreement entered into by which the "pit analysis" would control the sale price. (N.T., 79). Moreover, the witness maintained that he had no authority to enter into such a contract. (N.T., 81). Finally, Mr. Weisberger, also a witness for Appellant, opined that it was not a standard procedure for Appellant to purchase coal on a point-of-origin price sale. (N.T., 117).

It is axiomatic that the jury's function is to determine from the surrounding facts of the parties' dealings whether an oral contract exists. *Ingrassia Construction Co., Inc. v. Walsh,* 337 Pa.Super. 58, 67, 486 A.2d 478, 483 (1984). "[I]n the case of a disputed oral contract, what was said and done by the parties as well as what was intended by what was said and done by them are questions of fact for the jury." *Solomon v. Luria,* 213 Pa.Super. 87, 246 A.2d 435, 438 (1968) (citations omitted).

■ In the case at bar, there was ample evidence from which a reasonable jury could conclude that an oral contract existed and that the "pit analysis" of the coal would control the sale price. It is patently clear that the disposition of this issue turned on the disputed facts submitted to the jury. As illustrated, *supra,* the parties' witnesses gave conflicting testimony which the fact finder could either believe or disbelieve. It is obvious that the jury chose to accept as true Appellee's version of the facts. From our examination of the evidence under the appropriate scopes of review for a judgment n.o.v. and new trial, we therefore hold that the jurors were justified in drawing their conclusions. We find no error committed by the trial court in denying Appellant's motion on these grounds.

The second prong of our analysis involves the effect of the purchase orders sent to Appellee. These documents contained the provisions that the final pier analysis would govern the price of coal. Mr. Sedlak testified at trial that he received purchase orders, but did not examine their

provisions. Likewise, he stated that he did not sign or otherwise execute the purchase orders. (N.T., 16–17).

It is Appellant's position that Appellee's conduct in relation to the purchase orders constituted acceptance of their terms. Appellant argues that the "pier analysis" versus "origin analysis" distinction merely determined the location of the analysis and did not amount to a material alteration of the oral contract previously established by the parties. In the alternative, it is urged that Appellee's failure to notify Appellant by objection waived any "material alteration" protection under § 2207 of the Uniform Commercial Code. We find Appellant's interpretation of the facts and law on this issue to be untenable.

Clearly, "prior oral agreement cases in which one or both of the parties follow up with a confirming form are to be run through [§ 2207(b)(2)] with whatever result [that] subsection dictate[s]". J. White and R. Summers, *Uniform Commercial Code*, § 1–2 at 35–36 (2nd ed. 1980). Section 2207(b) of the Uniform Commercial Code, as adopted by our legislature, provides:

(b) Effect on contract. The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(1) the offer expressly limits acceptance to the terms of the offer;

(2) they materially alter it; or

(3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

13 Pa.C.S.A. § 2207. Whether or not the terms of the purchase orders became part of the oral contract depends upon the provisions of subsection (2). If the "pier analysis" terms are a material alteration to the oral contract's "origin analysis" terms, they will not be included unless expressly agreed to by Appellant.

■ The task of interpreting a contract provision is a matter of law to be performed by the court, rather than by

a jury. *Kardibin v. Associated Hardware,* 284 Pa.Super. 586, 595–596, 426 A.2d 649, 654 (1981). Although the trial court opinion does not discuss this question of law, we find that the jury verdict was properly upheld. The "pier analysis" clause in the purchase order would have been a material alteration to the underlying oral contract. This is evidenced by the fact that the ultimate difference in the price of the coal for which Appellee sued amounted to $26,323.84.

Appellant's claim that § 2207(b)(2) is not applicable since reasonable notification was not sent by Appellee is equally unconvincing. Insofar as the "pier analysis" provisions were material alterations to the oral contract, Appellee did not have the duty to give notification of objection within a reasonable time following detection. Comment 6 to the Uniform Commercial Code is dispositive:

> [w]here clauses on confirming forms ... conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract.

Accordingly, Appellant's argument must fail.

Judgment affirmed.