**Allen KRAMER and Darlene Kramer, his wife, Appellants,**

**v.**

**Kathleen SCHAEFFER, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 23, 2000.

Filed April 20, 2000.

---

Larry Glass, Philadelphia, for appellants.

Robert J. LaRocca, Philadelphia, for appellee.

Before McEWEN, President Judge, and HUDOCK, J. and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 Allen and Darlene Kramer (h/w) appeal from the order entered in the Court of Common Pleas of Philadelphia County denying their motion to enforce a settlement agreement and impose sanctions for failure to deliver settlement funds. We reverse and remand for sanctions and the award of attorney's fees.

¶ 2 The Kramers instituted suit against Appellee, Kathleen Schaefer, for injuries Allen sustained in an automobile accident caused by Schaefer.[1] At the time of the accident the Schaefer vehicle was insured under a policy issued by Allstate Insurance Company. The parties proceeded to arbitration and a $10,000.000 award was handed down in favor of the Kramers. Subsequently Schaefer appealed the decision to the Philadelphia Court of Common Pleas. Prior to trial, Allstate offered the Kramers $3,500.00 ("pre-trial offer/first offer/original offer") to settle the case. The Kramers rejected the offer. After a two day jury trial, Schaefer was found liable for the Kramers' personal injuries; the jury, however, awarded zero damages to the Kramers.[2]

¶ 3 Subsequent to trial, the Allstate adjuster who had been involved in the case commenced maternity leave. She handed the case over to another insurance company adjuster. On September 17, 1999, not aware that the case had already been tried to a jury verdict, this newly appointed adjuster contacted the Kramers' attorney and offered to settle ("post-verdict offer/second offer") the matter for $3,500.00. The Kramers' attorney accepted. The fol-

lowing day, the Kramers' attorney sent Allstate a letter confirming its settlement offer and his acceptance and requested a release be prepared acknowledging that his clients would have no future claims against Schaefer. Thereafter, on September 21, 1998, the Allstate adjuster who had tendered the post-verdict settlement offer sent the Kramers the following letter:

> Please note that this file had been reassigned to me on September 17th, 1998 from Ms. Christine Shenouda who is presently out on maternity leave. On the 17th, I called your office to settle this case[;] at that time I was not aware that this case had already been tried. Your ethics astound me because when discussing this case you did not mention that same had already been tried and you were well aware that I was not the original adjuster on the case.
>
> At this time Allstate will not be making payment to your client, we will be standing by the $0.00 verdict.

¶ 4 On September 23, 1998, the Kramers' attorney likewise sent a letter to Allstate stating that he considered the case settled for $3,500.00 pursuant to the parties' telephone conversation and that he expected a signed release from Allstate and fully expected Allstate to honor the settlement agreement. When Allstate continually failed to acknowledge or honor the proposed offer it had tendered on the 17th, the Kramers filed a petition to enforce the settlement and also requested sanctions for failure to deliver settlement funds. *See* Phila.Civ.R. 229.1. The trial court denied the Kramers' petition. On appeal, the Kramers present the following issues for our review:

> (1) Was there an enforceable settlement agreement between the parties?
>
> (2) Were there no grounds to set aside the settlement agreement?

---

1. Mrs. Kramer sought compensation under the legal theory of loss of companionship/consortium.

2. The jury determined that Schaefer's negligence was not a substantial factor in bringing about *Mr. Kramer's injuries.*

(3) Should all of the averments of the motion to enforce settlement [have] been accepted as true, and the motion granted for this reason?

■ ¶ 5 Before addressing the substantive merits of this case, we must first ascertain whether the issues in the appeal are preserved for our review. Schaefer argues that the issues on appeal are waived because the Kramers failed to file post-trial motions in accordance with Pa. R.C.P. 227.1. We disagree. Post-trial motion relief may be granted only when the grounds asserted were raised in pre-trial proceedings or by another appropriate method at trial. Pa.R.C.P. 227.1(b)(1). Such grounds must be specifically raised in the motion. Pa.R.C.P. 227.1(b)(2). Presently, the issue on appeal concerns a post-verdict settlement offer and its enforceability.[3] As such, the present concern does not involve any ground that was raised either in pre-trial or trial proceedings. Therefore, we find Pa.R.C.P. 227.1 inapplicable to the instant situation and the Kramers' failure to conform thereto not an obstacle to review their claim.[4]

■ ¶ 6 We, however, must also determine whether a motion to enforce a settlement offer/agreement is considered a final order for purposes of invoking our jurisdiction under Pa.R.A.P. 341. Recently, in *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209 (1999), our supreme court was faced with the issue of whether a common pleas court order denying a motion to approve a pre-trial settlement was a collateral order appealable as of right under Pa.R.A.P. 313.

On direct appeal our court had quashed the appeal, finding the order neither final nor collateral under our appellate rules. The supreme court affirmed our court's decision stating:

We believe it likewise defies common sense to maintain that allowing appeals as of right from orders denying enforcement of settlement agreements, or, as here, denying approval of a settlement agreement, promotes the "efficient, expeditious and judicious resolution of disputes." Any efficiencies gained in reduced trial litigation would be at the expense of increased appellate litigation.

*Id.* at 598, 725 A.2d at 1214. Moreover, the *Geniviva* court found that only those claims that "involve interests 'deeply rooted in public policy' can be considered 'too important to be denied review.'" *Id.* at 599, 725 A.2d 1209. As such the supreme court affirmed the order quashing the appeal, finding that the common pleas court's order denying the motion to approve the parties' settlement implicated no policy interests of sufficient import that required an immediate appeal. *Id.*

¶ 7 The distinguishing factor between this case and cases with facts similar to *Geniviva* is the time that the relevant settlement offer was tendered. Presently, we are concerned with post-verdict offers, while *Geniviva* applied our appellate rules to the interlocutory nature of appealing a trial court's order refusing to enforce/approve a pre-trial settlement agreement. In the former case, we acknowledge that the case has already been tried to a ver-

---

**3.** Additionally, the Kramers followed the proper procedure under the Philadelphia Local Rules of Court by filing a motion to enforce the settlement after the requisite period of time elapsed within which Schaefer should have tendered the settlement monies. *See* Phila. Civ. R. 229(D). In further conformance with this Rule the Kramers filed a motion for sanctions and the requisite affidavit and accompanying attachments. *See* Phila. Civ. R. 229(E)(2).

**4.** We also note the fact that the enforceability of a settlement agreement has been found to

be separable from and collateral to the main cause of action in a cases where a person has sustained injuries after an automobile accident caused by a defendant's actions. *See National Recovery Systems v. Perlman*, 367 Pa.Super. 546, 548–50, 533 A.2d 152, 153 (1987) (court found that enforceability of alleged settlement agreement was separable from the merits of the underlying claim). The former issue, however, concerns the validity of a contractual agreement, while the latter involves principles of negligence.

dict, that the parties have already expended the costs of litigation and that damages have been determined. That being said, we are still concerned with the costs of appellate litigation and the appeals process in general which not only involves the expending of legal means, but also judicial resources. However, we do not believe that this court should come to the same result regarding the appealability of a post-verdict settlement based upon case law dealing with the same issue in a pre-trial offer context. First, a settlement offeree does not have the same recourse for enforcement of a post-verdict offer as does a pre-verdict offeree. In the latter scenario, the party "is free to raise the issue of the validity of the settlement agreement on appeal from the judgment on the underlying claim, or in a collateral action." *Knisel, supra* at 256. In the present case, that is exactly what the Kramers are now attempting to accomplish—review of the binding nature of the settlement agreement after the case has already been tried. Accordingly, we find that this appeal is properly before this court. It is timely and the order is final under our appellate rules of court. *See* Pa.R.A.P. 341.

¶ 8 Next, we must focus upon the propriety of the trial court's decision not to enforce the post-verdict agreement. Whether the trial court improperly failed to enforce the settlement offer is a challenge to the court's conclusion of law. As such, our scope of review is plenary. We are free to draw our own inferences and reach our own conclusions. *Yaros v. Trustees of the University of Pennsylvania,* 742 A.2d 1118 (Pa.Super.1999). "If a trial court erred in its application of the law, [we] will correct the error." *Id.* at 1121, *citing Francis J. Bernhardt, III, P.C. v. Needleman,* 705 A.2d 875, 876–77 (Pa.Super.1997).

¶ 9 In the present case the trial court found that Allstate's post-verdict settlement offer lapsed when the Kramers rejected Schaefer's pre-trial settlement offer of the same amount, $3,500.00. In essence the court found the second offer just a restatement of the first. This premise is based upon the court's finding and Schaefer's contention that the Allstate adjuster only made the second offer due to her belief that the case had not yet been tried to a jury verdict. Under such assumption, the court states that "any settlement after a defense verdict runs counter to public policy, and, in effect, gives Plaintiff two bites of the apple. Clearly, Defendant made the second settlement offer in error and Plaintiff should not benefit from the clerical error in this manner."

¶ 10 In analyzing the proposed post-verdict offer, the court looked to the time constraints, imposed by law, within which a settlement offer is deemed to be reasonably outstanding and "for the taking" by the opposing party. The court then focused its inquiry upon the particular facts of the case and found that the second offer was no longer outstanding after the verdict based upon the fact that the Kramers had rejected the same monetary settlement offer prior to trial. In doing so, the court improperly overlooks the fact that the two offers were completely independent of one another and the rejection of the former did not automatically invalidate the second, save for a legal reason to nullify such offer.

¶ 11 The enforceability of settlement agreements is determined according to principles of contract law. *McDonnell v. Ford Motor Co.,* 434 Pa.Super. 439, 444–46, 643 A.2d 1102, 1105 (1994). "In the case of a disputed oral contract, what was said and done by the parties as well as what was intended by what was said and done by them are questions of fact." *United Coal v. Hawley Fuel Coal, Inc.,* 363 Pa.Super. 106, 107–09, 525 A.2d 741, 742 (1987).

¶ 12 In the present case, the only evidence regarding the facts surrounding the parties' oral agreement to settle the case post-verdict is contained in the letters exchanged between their attorneys. From this correspondence we glean that an All-

state adjuster offered the Kramers $3,500.00 in full settlement of their claim against Schaefer. The parties apparently discussed the case and came to an agreement on the settlement. The Kramers both verbally and in writing confirmed their acceptance of such offer to Schaefer. Schaefer (through her insurer, Allstate) has refused to honor the settlement and tender the $3,500.00.

 ¶ 13 In her defense, Schaefer (and Allstate) contend that the settlement should not be paid due to the offeror's mistaken belief that the case had not yet been tried at the time she made the offer to settle. Under our law:

> Generally if a mistake is not mutual, but unilateral, and is not due to the fault of the party not mistaken, but to the negligence of the one who acted under the mistake, it affords no basis for relief. *See Marmon Philadelphia Co. v. Blocksom,* [103 Pa.Super. 542] 157 A. 510 (Pa.Super.1931); *Seaboard Radio Broad. Corp. v. Yassky,* [176 Pa.Super. 453] 107 A.2d 618 (Pa.Super.1954). On the other hand, when there is mistake on one side and fraud on the other, relief is available. *Cook v. Liston,* 192 Pa. 19, 21, 43 A. 389, 390 (1899). Likewise, irrespective of active fraud, if the other party knows or has good reason to know of the unilateral mistake, relief will be granted to the same extent as a mutual mistake. *See Cook v. Liston, supra*; Restatement, Contracts §§ 472(1)(b), n6 503, 505; Simpson, Contracts § 99 at 201 (2d ed.1965).

*McFadden v. American Oil Company,* 215 Pa.Super. 44, 52–55, 257 A.2d 283, 288–89 (1969). *See Smith v. Thomas Jefferson University Hosp.,* 424 Pa.Super. 41, 45–47, 621 A.2d 1030, 1032 (1993) (citing *McFadden, supra* ). "A corollary to the aforementioned principles is the rule that the mistake under scrutiny, as well as the actual intent of the parties, must be clearly proven." *Dudash v. Dudash,* 313 Pa.Super. 547, 554–56, 460 A.2d 323, 327 (1983),

*citing Hassler v. Mummert,* 242 Pa.Super. 536, 538–39, 364 A.2d 402, 403 (1976).

 ¶ 14 The Allstate adjuster states that at the time she extended the second offer to the Kramers' attorney, she was unaware of the status of the personal injury case. Most important, she did not know that the case had actually been tried by a jury to a verdict which was monetarily in favor of Allstate's insured, Schaefer. Even assuming, *arguendo,* that the second settlement offer would not have been made by Allstate had the adjuster known that the case had already been tried, we must ascertain from the record whether the Kramers' attorney knew or had a good reason to know of the unilateral mistake – namely, that the Allstate adjuster did not know that the case had already gone to trial and a verdict of zero damages been returned and that had she known such facts, a second settlement offer would not have been extended. In answering this question, we must keep in mind that it is Schaefer's duty to clearly prove such mistake in order to invalidate the parties' agreement.

¶ 15 The record does not disclose any evidence that the Kramers' attorney was aware that the second settlement offer was premised upon the fact that the adjuster wanted to settle the case and avoid trial. Schaefer would have us believe that the following language in a letter from the Kramers' lawyer does evidence such knowledge:

> I did nothing to deceive you, and simply expected that *you* knew what you were doing. If *your* file was not properly documented, that is not *my* mistake. If there was a breakdown in *your* company's communications, that is not an error on *my* part.
>
> In view of the fact that you made an offer to my client as your company's representative; which offer has been accepted, your company is bound to honor this contract. I fully expect you to send me the appropriate release, to fulfill Allstate's contractual obligation.

We are not convinced that the above-quoted language proves that the Kramers' attorney either knew or had reason to know that the offeror (the Allstate adjuster) called to settle the case believing that it had not yet gone to trial. Moreover, there is no record evidence (in writing) that shows that at the time the Allstate adjuster offered the second settlement offer it was done only because she thought the case had not yet been tried.

¶ 16 We take note that it is common practice for a party to offer to settle a case after a jury verdict in order to prevent a successful appeal.[5] Such seems all the more likely in this case where a panel of arbitrators initially awarded the Kramers $10,000.00. Such post-verdict settlements, we find, should be favored just as much as pre-trial settlements; moreover, they further the public policy of entering into such agreements: expeditious termination of cases, lower costs expended by parties and full and final releases of all future liability issues. *See generally* Mori Irvine, *Better Late Than Never: Settlement at the Federal Court of Appeals,* The Journal of Appellate Practice and Process, Vol. 1, No. 2 (Summer 1999).[6] However, we are quick to point out that despite the attempt to employ this practice in the present case, Schaefer's failure to honor the settlement agreement has, in fact, cut against this favored policy by still causing legal and judicial resources to be expended at the appellate level. We admonish Schaefer for this unfavorable practice.

¶ 17 We are well-aware that reversal of a trial court's decision in such a situation is neither common nor taken lightly. However, where a trial court's findings are not based upon competent evidence, we must overturn. *Yaros, supra*; *Bernhardt, III, P.C., supra.* Presently, Schaefer did not present evidence that proved the Kramers knew or had reason to know that the post-verdict settlement offer was only extended because the adjuster was unaware that the case had been finally tried. Additionally, without record proof, we are not convinced that Allstate only made the offer believing the case had not yet gone to trial.

¶ 18 Finally, we note that the Kramers are entitled to sanctions for Schaefer's failure to tender the settlement funds. *See* Phila. Civ. R. 229.1(F). The trial court shall impose sanctions in the form of simple interest at a rate equal to the coupon yield equivalent of the average accepted auction price for 52–week U.S. Treasury Bills at the auction last preceding the date on which the attorney affidavit was filed, running from the twenty-first day to the date of delivery of the settlement funds, together with reasonable attorneys' fees incurred in the preparation of the affidavit. The trial court's order shall be in accordance with the form set forth in

5. In fact, the Philadelphia Rules of Civil Procedure allude to such a scenario:

> **Rule \*229 Termination of Cases**
> (C) Termination of a case after the entry of an unappealed arbitration or after the entry of a verdict or judgment may be accomplished without leave of Court only by filing a praecipe to satisfy the award, verdict of judgment signed on behalf of the prevailing party or parties.
> (D) When a settlement has been consummated, an award, verdict or judgment has been paid, or the parties have otherwise agreed to terminate a case, the appropriate praecipe or praecipes shall be filed within twenty (20) days thereafter, in default of which sanctions may be imposed.
>
> Phila. Civ. R. 229.

6. Article discussing the fact that appellate cases remain ripe for mediation and do settle on appeal. Such settlements are driven by the professional concern with the probabilities of winning on appeal, an interest in protecting a favorable trial court opinion, and the availability of alternative legal avenues that are better-suited to resolving a client's problem. Practically, such resolution may be preferred due to the protracted time it may take for an appeal to be decided. It may also cost the client less to settle at the appeal stage rather than later; tax benefits may result due to structured settlement payments. Finally, personal concerns drive such agreements at this later stage—the client may have an immediate need to settle for financial reasons; the client may no longer favor conflict; the parties may desire peace of mind.

the Philadelphia Rules of Civil Procedure. *See* Phila. Civ. R. 229.1(G). Moreover, the Kramers shall be awarded reasonable attorneys' fees and costs associated with taking this appeal. *See* Pa.R.A.P. 2744.

¶ 19 Order reversed. Case remanded for the imposition of sanctions and attorney's fees in accordance with the dictates of this decision. Jurisdiction relinquished.

¶ 20 McEWEN, President Judge, files a Concurring and Dissenting Statement.

McEWEN, President Judge, concurring and dissenting:

¶ 1 Since the author of the opinion of the majority has provided, in his usual fashion, a careful analysis and perceptive expression of view, I hasten to join in the rulings of the majority that this appeal is properly before this Court, and that the settlement agreement should be enforced. As noted by the majority, the issue of the enforceability of an alleged settlement agreement must be determined by reference to well-settled principles of contract law. The verdict in the instant case was returned by the jury on September 15, 1999, and two days thereafter, on September 17, 1999, Allstate's adjuster offered to settle the matter for $3500. This offer was immediately accepted by counsel for appellants. As there was consideration for the offer – appellants did not file post-trial motions or an appeal from any judgment subsequently entered on the verdict—I would vacate the order of the trial court and direct that judgment be entered for appellants in the amount of the settlement offer plus legal interest, based on a finding that an enforceable legal contract was entered into by counsel for appellants and the adjuster. Nonetheless, however apparent the basis for sanctions, on the basis of the instant record, I would not impose the sanctions provided by Philadelphia Civil Rule 229.1.