J-A16021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BENEFICIAL MUTUAL SAVINGS BANK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHAEL W. KWASNIK, CAROL J. KWASNIK, KWASNIK, RODIO, KANOWITZ & BUCKLEY, P.C., OPIS MANAGEMENT FUND, LLC, LIBERTY STATE FINANCIAL HOLDINGS CORP., AND IRREVOCABLE TRUST OF STEVEN C. KWASNIK | |
| Appellees | No. 2581 EDA 2014 |

Appeal from the Order Entered August 1, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): April Term, 2011 No. 001488

BEFORE:  LAZARUS, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:          **FILED OCTOBER 05, 2015**

Appellant, Beneficial Mutual Savings Bank, appeals from the order entered on August 1, 2014, denying its motion to enforce settlement agreement.  We vacate and remand.

The trial court ably explained the underlying facts and procedural posture of this case:

> This matter was initiated by Appellant on April 13, 2011, when it filed a *praecipe* for entry of judgment by confession ("Confession of Judgment" or "Judgment") in the Court of Common Pleas, Philadelphia County in the amount of $4,261,103.24 against several defendants,[fn.1] including [Defendant William M. Kwasnik, Trustee of the Irrevocable Trust of Steven C. Kwasnik (hereinafter "Trustee"),] for defaulting on the terms of a loan and security agreement

*Retired Senior Judge assigned to the Superior Court.

[(hereinafter "Loan Agreement")] and promissory note dated May 18, 2006. The Defendants additionally pledged Liberty Bell Bank common stock that they owned as security for the loan by an agreement also dated May 18, 2006 (hereinafter "Pledge Agreement"). [The Pledge Agreement reflected that the Defendants were pledging the following shares of Liberty Bell Bank stock as security: Trustee: 132,838 shares; Opis Management Fund, LLC: 121,797 shares; Carol Kwasnik: 127,807 shares; Liberty State Financial Holdings, Corp.: 130,530 shares; and, Michael Kwasnik: 251,250 shares. *See* Pledge Agreement, at Schedule 1. The Pledge Agreement defined the above-listed shares as the "Pledged Shares;" the Pledge Agreement further declared that the term "Pledged Collateral" included the "Pledged Shares." *Id.* at 1-2.]

> [fn.1] The other defendants included Michael W. Kwasnik; Carol J. Kwasnik; Kwasnik, Rodio, Kanowitz & Buckley[,] P.C.; Opis Management Fund, LLC; and[,] Liberty State Financial Holdings Corp. Upon motion by Appellant, Defendant Liberty State Financial Holdings [] was severed from the action by [] order docketed September 9, 2011. [Trial Court Order, 11/9/11, at 1.] The remaining defendants, along with Trustee are hereinafter, collectively, referred to as "Defendants."

In response to that Confession of Judgment, Defendants filed a "Petition to Strike Judgment, and, In the Alternative, to Open Judgment, and to Stay Execution Pending Final Disposition on the Petition" on May 25, 2011 [(hereinafter "Petition to Open/Strike")], arguing that, among other reasons, the Judgment should be opened because Appellant accepted late payments from Defendants, thereby waiving the right to claim default, and that the parties had orally agreed to amend the Loan Agreement. [Petition to Open/Strike, 5/25/11, at 2-4]. [In the alternative,] Defendants argued that . . . the Judgment should be stricken because Appellant had failed to sufficiently state the basis of the default in its complaint, and that the [trial] court should stay the execution of the Judgment as a result, pending the opportunity to conduct a hearing on the validity of the Judgment. *Id.* at 4-5. . . .

- 2 -

Appellant responded to Defendants' [Petition to Open/Strike] on June 14, 2011, arguing that Defendants and Appellant had not entered into an oral agreement [] and [that] Appellant had not accepted late payments from Defendants without objection. [Appellant's Response, 6/14/11, at 3-4]. . . .

Upon consideration of the Petition to Open/Strike and Appellant's response thereto, the [trial court] issued an order on June 22, 2011, granting leave for the parties to take discovery on disputed issues of fact, ordering that the parties submit notes of testimony and supplemental memoranda, scheduling a hearing [], and staying the execution proceedings. [Trial Court Order, 6/22/11, at 1].

On March 5, 2012, Appellant filed a *praecipe* to satisfy judgment [(hereinafter] "Satisfaction of Judgment") as to defendants Michael Kwasnik; Rodio, [Kwasnik,] Kanowitz & Buckley, P.C.; and[,] the Trustee[. The *praecipe* requested] that [the trial court] mark the Judgment as satisfied with [respect] to those defendants upon payment of court costs. Satisfaction of Judgment, 3/5/12, at 1]. Appellant filed its *praecipe* pursuant to a settlement agreement [(hereinafter] "Settlement Agreement") signed by the parties on January 11, 2012. [In relevant part, the Settlement Agreement provides:

<u>SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE</u>

THIS SETTLEMENT AGREEMENT [] is made effective this 11th day of January, 2012, by and among [APPELLANT], and MICHAEL W. KWASNIK, CAROL J. KWASNIK, OPIS MANAGEMENT FUND LLC, KWASNIK, RODIO, KANOWITZ & BUCKLEY, PC, AND [THE TRUSTEE] (individually, a "Borrower" and collectively, the "Borrowers") ([Appellant] and the Borrowers are collectively referred to as "the Parties"). . . .

<u>BACKGROUND</u>

A. On or about May 18, 2006, [Appellant] loaned the Borrowers [$4,200,000.00] (the "Loan") pursuant to

- 3 -

that certain [Loan Agreement] also dated as of May 18, 2006. . . . The Loan also was evidenced by a Promissory Note dated May 18, 2006. . . .

B. The Loan is secured by a pledge of all shares of Liberty Bell Bank common stock owned now or hereafter by any Borrower (the "Stock"), as further provided in the Loan Agreement and the Pledge Agreement dated May 18, 2006. . . . The aforementioned Loan Agreement, [Promissory] Note, Pledge Agreement and all other documents executed or delivered in connection with the Loan are hereinafter collectively referred to as the "Loan Documents". All of the indebtedness, liabilities and obligations owing from any of Borrowers to [Appellant] under the Loan Documents and this Agreement are hereinafter collectively referred to as the "Obligations." All of the Stock, Pledged Collateral (as defined in the Pledge Agreement, Collateral (as defined in the Loan Agreement) real property, personal property and other assets of any Borrower now or hereafter subject to any lien or security interest under any of the Loan Documents, as modified by this Agreement, are hereinafter collectively referred to as the "Collateral."

C. Borrowers delivered to [Appellant] the original Stock certificates along with stock powers . . . .

D. Borrowers have failed to make payments due and owing under the terms and conditions of the Loan Agreement and currently are in default. Moreover, the value of the Collateral currently securing the Loan has depreciated significantly in value, as a result, the Borrowers currently are in breach of certain financial covenants contained in the Loan Documents.

E. Judgment by Confession has been entered by [Appellant] against Borrowers in the [Philadelphia County Court of Common Pleas] **and [Appellant] and the Borrowers wish to resolve all claims** between and among them by surrendering collateral **subject to the terms and conditions set forth in this Agreement**.

. . .

- 4 -

NOW THEREFORE, the parties hereto, intending to be legally bound hereby, mutually agree:

. . .

3. <u>Surrender of Collateral as Consideration for Settlement</u>. [Appellant] and the Borrowers hereby agree to resolve the lawsuit and any other claims by and among the Parties **by the Borrowers surrendering collateral currently held by [Appellant]** and the Borrowers further agree to cooperate and execute such documents to ensure that [Appellant] may take good title to said collateral. **This surrender of collateral serves as the consideration for the releases contained herein**. Borrowers agree to execute any further documents that are necessary to effectuate the surrender of collateral.[1]

4. <u>Stock Surrendered</u>. The Borrowers warrant and represent that **the following collateral is hereby surrendered by them to [Appellant] in full satisfaction of their obligations under the terms of the Loan Agreement and [Promissory] Note**:

Michael Kwasnik: 251,250 Shares of Liberty Bell Bank

Carol Kwasnik[:] 131,642 Shares of Liberty Bell Bank

Opis Management Fund, LLC[:] 121,797 Shares of Liberty Bell Bank

[**Trustee**:] **9,000 Shares** of Liberty Bell Bank

5. <u>Releases</u>. For and in consideration of the release of collateral, and for the mutual promises contained herein, BUT SUBJECT to the provisions for [sic] paragraph 6 of this Agreement[,] [Appellant] releases and gives up any

_____

[1] This Court notes that all uses of the term "collateral" in the body of paragraph 3 are lowercase.

and all claims and rights, which it had or could have had against Borrowers. . . .

6. <u>Condition</u>. This Agreement, and [Appellant's] obligations hereunder, **are expressly conditioned upon [Appellant] receiving all of the benefits conveyed under paragraph 3**. If for any reason, [Appellant] does not receive the full benefit of this bargain, along with the right to sell and otherwise dispose of the Stock without hindrance or delay caused by any of the Borrowers, the release set forth herein shall be void and of no force or effect as to all of the Borrowers, and the Bank shall have the right to enforce its rights and remedies under the loan documents as though this Agreement had not been entered into.

7. <u>Stock Powers</u>. Borrowers shall execute and deliver to [Appellant] new Stock Powers for all new and existing pledged Stock substantially in the form as attached as Exhibit A hereto.

*See* Settlement Agreement, dated 1/11/12, at 1-8 (emphasis added) (some internal underlying omitted)].

Once the Satisfaction of Judgment was filed, [the trial court] ruled that the Petition to Open/Strike was moot with [respect] to the defendants named in the Satisfaction of Judgment. [Trial Court Order, 3/16/12, at 1]. Additionally, [the trial court] ordered that the Petition to Open/Strike against defendant Opis Management Fund, LLC be dismissed for lack of prosecution. *Id.*

More than two years later, Appellant filed [the current] "Motion to Enforce Settlement[ Agreement." Within this motion, Appellant requested: 1) that the trial court "enter an order enforcing the Settlement Agreement by requiring that [the Trustee] provide [Appellant] with [an] additional 123,383 shares of Liberty Bell Bank common stock, or the equivalent value of such;" or 2) "should [the trial court] not find the Settlement Agreement unambiguous, then . . . [the trial court should] enter an order allowing for discovery so that [Appellant] can establish that the inclusion to the reference of 9,000 shares was a mistake and the Settlement Agreement should be reformed to reflect 132,838 shares."

Appellant's Motion to Enforce Settlement Agreement, 5/30/14, at ¶¶ 21-22.] Appellant's basic contention was that, although Judgment had been marked satisfied as to Trustee, "[a]s a result of an error[,] . . . the number of shares listed as being owned by [Trustee] in the Settlement Agreement was reflected as 9,000 when in actuality the number of shares was 132,383. [*Id.* at ¶ 8]. Appellant argued that the intent of the parties was that all of the Liberty Bell Bank common stock owned by each of the [defendants] would be surrendered to satisfy the Judgment, despite the fact that the Settlement Agreement only required Trustee to surrender 9,000 shares. [*Id.* at ¶ 7]. When Appellant became aware of the alleged mistake, it asked Trustee to surrender the remaining 123,383 shares that it claimed Trustee owed, which Trustee refused to do. [*Id.* at ¶ 9]. . . .

Trustee filed its Response to the Motion to Enforce Settlement [Agreement] on July 15, 2014. . . . In the [response], Trustee argued[:] that the intention of the parties [to the Settlement Agreement was] to have Trustee surrender only 9,000 shares [and that this intent] was manifested in the [] references to [the "9,000 shares" in the Settlement Agreement;] that Appellant had waived any dispute over the Settlement Agreement when it filed the Satisfaction of Judgment according to the doctrine of accord and satisfaction[;] and[,] that the terms of the Settlement Agreement were unambiguous. [Trustee's Response to Motion to Enforce Settlement Agreement, 7/15/14, at 5]. . . .

Appellant replied to [the Trustee's response] on July 25, 2014, arguing that[:] the Settlement Agreement unambiguously required Trustee to surrender its remaining shares[;] the doctrine of accord and satisfaction was inapplicable to the instant matter[;] the Satisfaction of Judgment did not show Trustee complied with the terms of the Settlement Agreement[;] and[,] that if the [trial court] found the Settlement Agreement was ambiguous, the parties should be allowed to conduct additional discovery to prove that a mutual or unilateral mistake had occurred. [Appellant's Reply, 7/25/14, at 2-9].

[On July 31, 2014, the trial court held a hearing on Appellant's Motion to Enforce Settlement Agreement.] In support of [its] motion, Appellant argued that Trustee should have surrendered all Liberty Bell Bank common stock it owned, though the Settlement Agreement clearly stated that only 9,000 shares were required [to be surrendered. Appellant also requested that the trial] court allow additional discovery to take place to demonstrate that there was a mutual or a unilateral mistake as to the amount of stock listed [and stating] that Trustee had known that 9,000 was the incorrect number of shares at the time the Settlement Agreement was signed. [N.T. Hearing, 7/31/14, at 5-6]. Alternatively, Appellant argued that Trustee had somehow breached the Settlement Agreement when it provided only 9,000 shares to satisfy the Judgment.

[] Trustee objected to additional discovery, arguing that the Settlement Agreement was unambiguous and, consequently, that the parol evidence rule barred any additional evidence to interpret [the agreement]. Additionally, Trustee noted that though the Pledge Agreement suggested all of Trustee's shares would be surrendered, the Settlement Agreement clearly stated that 9,000 shares would satisfy the Judgment. Moreover, Trustee emphasized that it was implausible to argue that Appellant, a large, sophisticated banking institution, was somehow deceived during the settlement negotiations.

After considering the arguments presented by both parties, the [trial] court denied Appellant's Motion to Enforce Settlement [Agreement by order entered on August 1, 2014]. . . . Appellant filed the instant appeal with the Superior Court on August 26, 2014. . . .

Trial Court Opinion, 11/19/14, at 2-5 (some internal footnotes, capitalization, and citations omitted).

Following Appellant's notice of appeal, the trial court ordered Appellant to file a statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant timely

complied with the trial court's order and, within its Rule 1925(b) statement, Appellant claimed that the trial court erred when it concluded that "the language of the Settlement Agreement only required the surrender of 9,000 shares from [the Trustee] and when it failed to "provid[e] an opportunity for discovery to establish that the reference to the 9,000 shares [in the Settlement Agreement] was a unilateral mistake that the [Trustee] knew of and encouraged." Appellant's Rule 1925(b) Statement, 9/17/14, at 2.

After Appellant filed its Rule 1925(b) statement, the trial court filed its opinion to this Court. Within the trial court's thorough and well-written Rule 1925(a) opinion, the trial court concluded that the language of the Settlement Agreement "clear[ly] and unambiguous[ly reflected] the parties' intent that 9,000 shares was the amount required to satisfy the Judgment with respect to Trustee." Trial Court Opinion, 11/19/14, at 6-8. However, the trial court concluded that it had erred when it denied Appellant's Motion to Enforce Settlement Agreement because, it concluded, it should have "granted Appellant's request [to conduct] additional discovery [on the issue of whether the reference to the "9,000 shares" in the Settlement Agreement constituted] a unilateral mistake." *Id.* at 8-10. The trial court thus requested that this Court vacate its order and remand for further proceedings. *Id.* at 8.

Now on appeal, Appellant lists the following claims:

> 1. Whether the trial court abused its discretion and misapplied the law in denying [Appellant's] Motion to Enforce the Settlement Agreement[?]

2. Whether the trial court erred in denying [Appellant's] Motion to Enforce the Settlement Agreement as the clear and unambiguous language of the [Settlement Agreement] required that all previously pledged stock be surrendered as part of the settlement[?]

3. Whether the trial court erred in finding the language of the Settlement Agreement only required the surrender of 9,000 shares of Liberty Bell Bank stock from [the Trustee?]

4. Whether the trial court erred in finding that [Appellant's] filing of a Partial Satisfaction of Judgment was conclusive evidence that the terms of the Settlement Agreement were complied with and that it negated the [Trustee's] obligations under the Settlement Agreement[?]

[5.] Whether [the] trial court erred in not providing an opportunity for discovery to establish that the reference to the 9,000 shares was a mistake that the [Trustee] knew of and ignored[?]

Appellant's Brief at 2-3.

Although Appellant numbers five claims in the "statement of issues involved on appeal" section of its brief, the argument section of Appellant's brief lists only three issues. Specifically, the argument section of Appellant's brief declares that the trial court erred in denying its Motion to Enforce Settlement Agreement because: 1) "[t]he Settlement Agreement clearly and unambiguously provides that the intent of the parties was for the [Trustee] to surrender all of its collateral held by [Appellant,] which includes all 132,383 shares of Liberty Bell Bank stock originally pledged under the Pledge Agreement despite the reference to [the] 9,000 shares;" 2) "[t]he Satisfaction of Judgment does not evidence that the Trust complied with the terms of the Settlement Agreement;" and, 3) Appellant was not permitted to

- 10 -

conduct additional discovery "on the issue of whether the inclusion of the [term "9,000 shares"] in the Settlement Agreement was a unilateral mistake." Appellant's Brief at 8-15. We will address the three issues in the order raised above. Any claims that were listed in the "statement of issues on appeal" section of Appellant's brief but that were omitted from the argument section are waived. *Kituskie v. Corbman*, 682 A.2d 378, 383 (Pa. Super. 1996) ("[i]ssues not properly developed or argued in the argument section of an appellate brief are waived").

First, Appellant claims that the trial court erred in denying its Motion to Enforce Settlement Agreement because "[t]he Settlement Agreement clearly and unambiguously provides that the intent of the parties was for the [Trustee] to surrender . . . all 132,383 shares of Liberty Bell Bank stock originally pledged under the Pledge Agreement." Appellant's Brief at 8. This claim fails.

As this Court has held:

> [t]he enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

***Step Plan Serv.'s, Inc. v. Koresko***, 12 A.3d 401, 408 (Pa. Super. 2010) (internal quotations and citations omitted).

On appeal, Appellant does not claim that the Settlement Agreement contains conflicting terms or that it is otherwise ambiguous. Rather, Appellant simply claims that "[t]he Settlement Agreement **clearly and unambiguously** provides that the intent of the parties was for the [Trustee] to surrender . . . **all 132,383 shares** of Liberty Bell Bank stock originally pledged under the Pledge Agreement." Appellant's Brief at 8 (emphasis added). This claim plainly fails. As the trial court cogently explained:

> Paragraph [4] of the Settlement Agreement . . . clearly states [the] number of shares to be surrendered by each defendant under an appropriate title, "Stock Surrendered." [The] paragraph[] states that "[t]he Borrowers warrant and represent that the following collateral is hereby surrendered by them to [Appellant] in full satisfaction of their obligations under the terms of the Loan Agreement and Note." The paragraph then lists each defendant by name and the number of shares which will satisfy their respective obligations. Adjacent to Trustee's name . . . is "9,000 shares of Liberty Bell Bank."[2] Moreover, in later pages of

---

[2] Paragraph 4 of the Settlement Agreement reads in full:

> 4. <u>Stock Surrendered</u>. The Borrowers warrant and represent that **the following collateral is hereby surrendered by them to [Appellant] in full satisfaction of their obligations under the terms of the Loan Agreement and [Promissory] Note**:
>
> Michael Kwasnik: 251,250 Shares of Liberty Bell Bank
>
> Carol Kwasnik[:] 131,642 Shares of Liberty Bell Bank

*(Footnote Continued Next Page)*

the Settlement Agreement, the parties executed a stock power for each defendant, which lists the amount of stock to be transferred to Appellant. Page [14] of the Settlement Agreement includes Trustee's stock power under which Trustee agreed to "transfer and assign . . . 9,000 shares." This stock power was signed by Appellant's counsel and by Trustee. Although Appellant has identified Paragraph[s 3 and 7 of the Settlement Agreement] as relevant to the surrendering of stock, nothing in those paragraphs negates or makes ambiguous the clear representation that 9,000 shares of stock would be a "full satisfaction" of the Loan Agreement and Note between Appellant and Trustee.[3]

_(Footnote Continued)_ _____

> Opis Management Fund, LLC[:] 121,797 Shares of Liberty Bell Bank
>
> [**Trustee**:] **9,000 Shares** of Liberty Bell Bank

Settlement Agreement, dated 1/11/12, at 1-8 (emphasis added).

[3] Again, Paragraphs 3 and 7 of the Settlement Agreement provide:

> 3. <u>Surrender of Collateral as Consideration for Settlement</u>. [Appellant] and the Borrowers hereby agree to resolve the lawsuit and any other claims by and among the Parties by the Borrowers surrendering collateral currently held by [Appellant] and the Borrowers further agree to cooperate and execute such documents to ensure that [Appellant] may take good title to said collateral. This surrender of collateral serves as the consideration for the releases contained herein. Borrowers agree to execute any further documents that are necessary to effectuate the surrender of collateral.
>
> . . .
>
> 7. <u>Stock Powers</u>. Borrowers shall execute and deliver to [Appellant] new Stock Powers for all new and existing pledged Stock substantially in the form as attached as Exhibit A hereto.

_(Footnote Continued Next Page)_

Trial Court Opinion, 11/19/14, at 7 (some internal capitalization and citations omitted).

We agree with the trial court's sound analysis and conclude that Appellant's claim – that the Settlement Agreement "clearly and unambiguously provides that the intent of the parties was for the [Trustee] to surrender . . . all 132,383 shares of Liberty Bell Bank stock originally pledged under the Pledge Agreement" – is meritless.  Appellant's Brief at 8.

Appellant next claims that the trial court erred in denying its Motion to Enforce Settlement Agreement because "[t]he Satisfaction of Judgment does not evidence that the Trust complied with the terms of the Settlement Agreement."  However, the trial court did not deny Appellant's motion upon this basis.  *See* Trial Court Opinion, 11/19/14, at 7.  Therefore, Appellant's claim of error does not entitle it to relief.[4]

For Appellant's final claim on appeal, Appellant contends that the trial court erred in denying its motion because, in doing so, the trial court did not permit Appellant to conduct additional discovery "on the issue of whether the inclusion of the [term "9,000 shares"] in the Settlement Agreement was a

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

Settlement Agreement, dated 1/11/12, at 1-8.

[4] As Appellant acknowledges, the trial court never held that the Satisfaction of Judgment constituted "conclusive evidence that the terms of the Settlement Agreement were complied with."  Appellant's Brief at 12 n.8. However, Appellant declared, it raised the issue "out of [an] abundance of caution."  *Id.*

- 14 -

unilateral mistake." Appellant's Brief at 15. The trial court requested that we vacate its order and remand the case, so that this additional discovery may take place. We agree.

We have explained:

> Generally if a mistake is not mutual, but unilateral, and is not due to the fault of the party not mistaken, but to the negligence of the one who acted under the mistake, it affords no basis for relief. [However,] when there is mistake on one side and fraud on the other, relief is available. Likewise, irrespective of active fraud, if the other party knows or has good reason to know of the unilateral mistake, relief will be granted to the same extent as a mutual mistake. . . . A corollary to the aforementioned principles is the rule that the mistake under scrutiny, as well as the actual intent of the parties, must be clearly proven.

*Kramer v. Schaeffer*, 751 A.2d 241, 246 (Pa. Super. 2000) (internal citations and quotations omitted).

Here, Appellant's Motion to Enforce Settlement Agreement claimed that the reference to the "9,000 shares" in the Settlement Agreement was a unilateral mistake and that the Trustee "kn[ew] or ha[d] reason to know of the unilateral mistake." Appellant's Motion to Enforce Settlement Agreement, 5/30/14, at ¶ 22. Given this averment, we agree with the trial court that Appellant should have been given the chance to conduct discovery "so that [Appellant might] establish that the . . . reference [to the] 9,000 shares was a mistake." *See id.* Therefore, we vacate the trial court's August 1, 2014 order and remand for further proceedings.

Order vacated. Case remanded. Jurisdiction relinquished.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/5/2015